JUAN PEDRERO, Also Known as JUAN RIVERA, an Infant, by His Mother and Natural Guardian, PATRICIA RIVERA, Appellant, v ANTOINE C. MOREAU et al., Respondents.

This is a medical malpractice action brought on behalf of an infant who suffers from cerebral palsy and spastic quadriplegia, allegedly as a result of the negligence of physicians who were in attendance immediately prior to, and during, his induced premature birth. At issue on appeal was whether the defendant-physicians were, at the time of plaintiff's delivery on June 3, 1970, employees of the City of New York or of the New York City Health and Hospitals Corporation ("HHC"). The import of this distinction is that the former would have required that a notice of claim be filed within 90 days of the accrual of the cause of action (General Municipal Law §§ 50-d, 50-e), while lawsuit against HHC carried no such condition precedent until 1979, when the General Municipal Law was amended to add section 50-k.

By order of the Supreme Court, Bronx County (Dorothy Kent, J.), plaintiff was granted leave to serve a late amended notice of claim upon HHC on December 2, 1983. This order, which was predicated on the defendant-physicians' status as HHC employees, was never appealed. Instead, defendants moved for summary judgment dismissing the complaint by notice of motion dated December 12, 1986 and, upon the denial thereof with leave to renew, moved again on September 22, 1988, on the ground that HHC had not become their employer until July 1, 1970, and that plaintiff had failed to serve a timely notice of claim upon their employer of June 3, 1970, the City of New York. The IAS part granted defendants' motion, and plaintiff appealed.

Following a re-examination of this record upon applications for reargument, we find that the defendant-physicians were employees of HHC on June 3, 1970, and adhere to our original determination reversing the grant of summary judgment and reinstating the complaint.

At the time of the alleged malpractice, defendant-physicians were employees of Montefiore Hospital and Medical Center ("Montefiore"), a voluntary hospital and were assigned to work at Morrisania Hospital ("Morrisania"), a City hospital, pursuant to a July 1968 agreement between Montefiore and

the City of New York. The agreement provided that Montefiore doctors working at Morrisania Hospital would be deemed employees of the City of New York for all intents and purposes.

On May 26, 1969, the New York City Health and Hospitals Corporation Act ("Act"; L 1969, ch 1016, § 1), which created HHC, was enacted. The Act was approved May 26, 1969 and its provisions were to "take effect immediately". (L 1969, ch 1016, § 2.) In pertinent part, this legislation provided as follows: "Every employee who was an employee of the administration, or any constituent agency or department thereof, shall be automatically appointed and transferred to the corporation in the same or equivalent classification and position he held at the time of such transfer and for such purposes the corporation shall be deemed the successor to the city as a public employer of such employee." (McKinney's Uncons Laws of NY § 7390 [2] [a]; Act § 9 [2] as amended.)

We interpret this language as evincing a legislative intent that all employees, including physicians employed by the City, be transferred to and made employees of HHC as of the enactment date of the statute. The dissent observes that the provisions of section 7390 (2) (b) (ii), an amendment enacted in 1973 which specifically dealt with the transfer of "employees of the voluntary hospitals and medical schools", was given retroactive effect only to July 1, 1972. This section, however, does not apply to the defendant physicians, who were deemed employees of the City under the assignment agreement of July 1968.

In addition, section 7390 (2) (b) (ii), which was intended to clarify the 1969 mandate that "Every employee * * * shall be automatically appointed and transferred", did so by specifying that "employees of the voluntary hospitals and medical schools" would be classified in similar or corresponding positions to those held with the City. It did not affect the previously established automatic transfer of employees and, indeed, section 7390 (2) (b) (i) reaffirmed the need for such immediacy: "It is hereby found that the continued, uninterrupted, adequate and efficient administration of health and medical services is necessary for the general welfare of the people of the city of New York. It is further found that with respect to certain services provided for the corporation by the voluntary hospitals and medical schools in the municipal hospitals of the city of New York, such administration properly requires that employees performing those services be employed by the corporation. For the continued performance of those services

assumed by the corporation, the continued employment of personnel possessing ability, skill, experience and knowledge is essential. A requirement of competitive examination for the appointment of any such employee to the corporation would seriously interrupt the continuous provision of health and medical services and is thus impractical. It is thereby declared to be in the public interest that because of their knowledge, training, experience and efficiency, those employees of the voluntary hospitals and medical schools be continued in the employment of the corporation without competitive examination, and shall be afforded permanent competitive status."

In moving for summary judgment, defendants failed to produce documents, such as pay stubs, tax returns, or employment records, to refute the fact of their transfer to the employ of HHC as of May 26, 1969. Instead, defendants relied upon statutory language and related legislative memoranda stating that HHC's health and medical services were to be governed by "agreements [to] be entered into on or before July 1, 1970 for the operation of the municipal hospitals". (Mem of City of New York, 1969 NY Legis Ann, at 307; *see,* McKinney's Uncons Laws of NY § 7386 [1] [a]; Act § 6 [1] [a].) It is clear, however, that this language regarding the *operation* of the municipal hospitals is not dispositive on the issue of the date of employee transfer. Indeed, we note that no single date signaled such an all-purpose turnover. *(See, Matter of Economou v New York City Health & Hosps. Corp.,* 47 AD2d 877, *mod* 38 NY2d 662; *Matter of New York City Health & Hosps. Corp. v City of New York,* 43 AD2d 513, *lv dismissed* 33 NY2d 935.)*

For these reasons, we find that the defendant-physicians were employees of HHC on June 3, 1970 and, accordingly, hold that plaintiff had no duty to serve a notice of claim upon the City of New York. Nor was there, until the 1979 amendment establishing General Municipal Law § 50-k, any requirement that a notice of claim be served as a condition precedent to bringing suit against HHC or its employees. *(Bender v Jamaica Hosp.,* 40 NY2d 560.) The 1983 order of Justice Kent having permitted the infant plaintiff to effect late service of such notice of claim upon HHC, pursuant to General Municipal Law § 50-e (5), and plaintiff having done so and having thereafter commenced his action within the period permitted by said order, the action is both timely and proper.

With respect to the motions for summary judgment on the merits by defendants Herzig, Chaparro and Shariz, plaintiff has raised sufficient issues of fact to warrant denial of sum-

mary judgment at this time, and the motions are denied with leave to renew upon completion of discovery. Concur—Murphy, P. J., Rosenberger and Kassal, JJ.

Smith, J., dissents in a memorandum as follows: In June 1970 when this cause of action arose, the defendants were deemed to be employees of the City of New York (City) and not employees of the Health and Hospitals Corporation (HHC). It was, therefore, necessary to file a notice of claim against the City. None was filed and the action was properly dismissed by the motion court. Accordingly, I dissent.

This is a medical malpractice action by the infant-plaintiff for damages against six physicians who allegedly provided prepartum, partum and post-partum care to the infant and his mother at the time of his birth on June 3, 1970 at Morrisania Hospital. Plaintiff alleges that as a result of the negligence of these physicians, specifically the administration of Pitocin to induce his mother's labor, he suffered birth defects of cerebral palsy and spastic quadriplegia. Plaintiff was discharged on July 10, 1970.

In June 1970, defendants were hired by Montefiore Medical Center. Pursuant to a 1968 affiliation agreement, defendants were assigned to Morrisania and deemed to be employees of the City for purposes of indemnification regarding malpractice claims.

On December 21, 1982, plaintiff served a notice of claim upon the New York City Health and Hospitals Corporation and the Comptroller of the City of New York alleging negligent treatment at City and HHC hospitals between December 1969 and the time of filing. This was subsequently amended to December 1969 through May 1971. By order entered December 6, 1983, the motion court granted plaintiff leave to serve a late amended notice of claim (application denominated Motion For Leave To File An Amended Notice of Claim) against HHC and to conduct a deposition of HHC prior to the commencement of the action. The late amended notice of claim was thereafter served upon HHC. After the deposition, defendants herein, but neither HHC nor the City, were served with complaints alleging medical malpractice.

Defendants moved for summary judgment. The motion was granted on the grounds that at the time of the alleged malpractice defendants were City employees and the General Municipal Law § 50-e notice of claim requirement had not been timely satisfied.

The status of the defendants as either City or HHC employ-

ees at the time the action arose is the issue on appeal. This issue arose because on May 26, 1969, legislation was enacted which immediately established HHC and expressly provided that HHC would assume operation of the City hospitals on or before July 1, 1970. Plaintiff argued that as of May 26, 1969, defendants ceased to be City employees to which General Municipal Law § 50-e applied and became HHC employees for whom there was no notice of claim requirement. Defendants argued that they became HHC employees as of July 1, 1970.

In 1970, General Municipal Law §§ 50-d and 50-e required the service of a notice of claim and provided in relevant part as follows:

"[§ 50-d] 1. * * * every municipal corporation shall be liable for, and shall assume the liability * * * of any * * * physician * * * rendering medical * * * services of any kind to a person without receiving compensation from such person in a public institution maintained in whole or in part by the municipal corporation * * *

"2. No action shall be maintained under this section against such municipality, resident physician [or] physician * * * unless a notice of claim shall have been made and served in compliance with section fifty-e * * * Every such action shall be commenced pursuant to the provisions of section fifty-i of this chapter." (L 1960, ch 188, § 1.)

"[§ 50-e (1)] (a) In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action * * * against a public corporation * * * or employee thereof, the notice of claim shall * * * be served * * * within ninety days after the claim arises * * *

"5. The court, in its discretion, may grant leave to serve a notice of claim within a reasonable time after the expiration of the time specified in subdivision one of this section * * * [w]here the claimant is an infant * * *

"Application for such leave must be made within the period of one year after the happening of the event upon which the claim is based, and * * * prior to the commencement of an action to enforce the claim" (L 1945, ch 694, as amended by L 1959, ch 814, § 1).

Since defendants were considered employees of the City of New York on June 3, 1970, when the cause of action accrued, a notice of claim must have been served within ninety days of accrual or a motion to serve a late notice should have been made within one year. (*Norr v Spiegler*, 72 AD2d 20 [1980], *affd* 53 NY2d 661 [1981]; *Matter of Rosenberg v City of New*

*York,* 309 NY 304 [1955].) Even though General Municipal Law § 50-e (5) was amended (L 1976, ch 745, § 2), effective September 1, 1976, to expand the time in which a late filing could be made and to expand the grounds for making a late application, the amendment could not be retroactively applied to revive a stale claim. *(Matter of Beary v City of Rye,* 44 NY2d 398, 413 [1978]; *see also, Cohen v Pearl Riv. Union Free School Dist.,* 51 NY2d 256, 260 [1980] [only plaintiffs whose right to apply for leave had not yet expired on the date the amendment became effective are afforded the benefit of the new time provisions of section 50-e (5)].)

The conclusion of the majority that employees in the voluntary hospitals were transferred from the City to the HHC as of the enactment date of the statute, that is May 26, 1969, is clearly erroneous given the legislative history of the establishment of the HHC and given the cases referring to the date of the transfer.

First, the legislative history demonstrates that the HHC assumed control of Morrisania Hospital on July 1, 1970. By section 6 of the New York City Health and Hospitals Corporation Act (L 1969, ch 1016, § 1 [Act]; McKinney's Uncons Laws of NY § 7386) HHC was created for the purpose of operating City-owned medical facilities. While the Act creating HHC was effective on May 26, 1969, the date upon which it was signed into law, the Act expressly contemplated that operational control of hospitals would be transferred to HHC by an agreement which was to be executed with the City on or before July 1, 1970. Funds were to be appropriated for HHC as of July 1, 1970. *(See,* mem of City of New York, 1969 NY Legis Ann, at 305-307.) Thus, section 7386 (1) (a) of McKinney's Unconsolidated Laws of NY reads: "The city shall on or before the first day of July nineteen hundred seventy enter into an agreement or agreements with [HHC] * * * whereby [HHC] shall operate the hospitals then being operated by the city".

Thereafter, on June 16, 1970, the City entered into an agreement with HHC for the lease and the transfer of Morrisania and other hospitals. This agreement was approved by the New York City Board of Estimate on June 23, 1970. In addition, on July 1, 1970, Montefiore entered into an agreement of affiliation with HHC authorizing its continued operation of Morrisania.

The majority cites section 7390 (2) (b) (ii) of McKinney's Unconsolidated Laws of NY (Act § 9 [2] as amended) as evidence of the transfer of employees from the City to HHC in

1969 and, specifically, language which reads, "those employees of the voluntary hospitals and medical schools in the city of New York performing services which are assumed by the corporation [HHC] shall be transferred to and continued in employment by the corporation in similar or corresponding positions". Significantly, this section was passed on June 22, 1973, retroactively effective July 1, 1972 (L 1973, ch 884). The legislative history specifically states that section 7390 (2) (b) was designed "to clarify any possible ambiguity in existing law pursuant to which [HHC] may act." (1973 NY Legis Ann, at 173; *see also, Matter of Butler v New York City Health & Hosps. Corp.,* 82 AD2d 136, 139 [1981] [reference to the transfer of 3,000 employees of affiliated institutions working in municipal hospitals to HHC].) Therefore, the earliest possible date that defendants could be deemed employees of HHC would be July 1, 1970, pursuant to the affiliation agreement between HHC and Montefiore. This classification was apparently necessary because section 7390 (2) (a) which was originally promulgated as section 7390 (2) with the enabling legislation provided that "[e]very employee who was an employee of the administration [former Health Services Administration], or any constituent agency or department thereof, shall be automatically appointed and transferred to [HHC]." No reference was made to employees of voluntary hospitals and medical schools.

Second, no case has been found which refers to the transfer date of the operation of hospitals from the City to HHC as 1969. On the contrary, the references to the date of the transfer of operations are to July 1, 1970. *(See, Matter of Economou v New York City Health & Hosps. Corp.,* 47 AD2d 877 [1975], *mod* 38 NY2d 662 [1976]; *Matter of New York City Health & Hosps. Corp. v City of New York,* 43 AD2d 513 [1973], *lv dismissed* 33 NY2d 935 [1974].)

Finally, even though the infant remained in the hospital until approximately July 10, 1970, after the operation of Morrisania had been transferred to HHC, the accrual date remained June 3, 1970 (date of birth), the date on which the negligent acts were allegedly committed. *(See, Matter of Daniel J. v New York City Health & Hosps. Corp.,* 77 NY2d 630 [1991]; *Borgia v City of New York,* 12 NY2d 151 [1962].)

Given the legislative history and the case history, this court has no alternative but to affirm the decision of the motion court.