OPINION OF THE COURT
Meyer, J.
Because subdivision (b) of section 1103 of the Vehicle and Traffic Law does not apply in the City of New York and there is no comparable provision in the City of New York Traffic Regulations, a public service corporation vehicle double-parked on a city street for a purpose other than actual work on the street, is unlawfully parked. Whether the violation, of the city regulations by the Telephone Company truck involved in the present case was a proximate cause of plaintiffs’ injuries was, under the circumstances of this case, a question for the jury. The order of the Appellate Division which reversed a verdict in favor of plaintiffs insofar as it was against the New York Telephone Company and, as against that company, dismissed the complaint, should, therefore, be reversed and a new trial granted.[1]
Plaintiffs[2] were gathered on the sidewalk on the south side of 118th Street between Seventh Avenue and Lenox Avenue participating in or watching a card game. One hundred eighteenth Street is a one-way street running from west to east. Defendant Quilter sought to move his Continental, which had been parked on the north side of 118th Street with the driver’s side next to the north curb, and in the process mounted the sidewalk and struck plaintiffs. Approximately one and a quarter car lengths ahead of the Quilter vehicle on the north side of the street was a New *164 York Telephone Company truck double-parked approximately six inches south of the second car ahead of Quitter’s. Between the Quitter vehicle and the vehicle alongside of which the truck was double-parked was another vehicle parked at the north curb. The Telephone Company employees who double-parked the truck were at work in an abandoned building which could be reached through an alleyway on the north side of 118th Street.
Quitter, who had only a learner’s permit but was accompanied by a licensed driver as required by law, backed his car up, cleared the right side of the vehicle immediately in front of his car, then turned the wheel to the right. The evidence is contradictory concerning whether the car, which was 19 feet in length and 6 feet wide, then proceeded directly across the street, over the curb and into plaintiffs, or whether the turn to the right was made in an effort to maneuver around the truck and was followed by an incomplete turn to the left, after which the vehicle mounted the curb, striking plaintiffs. The truck was 7 feet 2 inches wide and 118th Street at the point at which the truck was double-parked is 29 feet wide. Thus, considering the curbside vehicle next to the truck, the space between those two vehicles, and the width of the truck, the open space alongside the right or south side of the truck was something less than 16 feet. Plaintiffs were at a point on the south sidewalk opposite the position of the double-parked truck.
The Trial Judge submitted the case to the jury on the theory that a public utility vehicle could double-park on the roadway if it was necessary to do so in order to make repairs to telephone lines,[3] and left to the jury the question whether, if the jury found the truck to have been double-parked in violation of law, that violation was a proximate cause of plaintiffs’ injuries. The jury found for plaintiffs against both defendants and fixed the liability of Quitter at 70% and of the Telephone Company at 30%. The Telephone Company having moved for dismissal notwithstanding the verdict, the Trial Judge denied the motion.
*165 On appeal by the Telephone Company, the Appellate Division modified and dismissed the complaint, reading subdivision (b) of section 1103 of the Vehicle and Traffic Law, which refers only to section 1202 of that law, as though it referred as well to section 81 (subd [c], par 2) of the New York City Traffic Regulations, and holding as to proximate cause that because Quilter’s testimony was belied by photographs in evidence, which it read to “conclusively show that the Continental did not maneuver around the truck” (74 AD2d, at p 310), it was incredible as a matter of law and left the jury’s verdict against the Telephone Company without rational basis in the evidence. We disagree on both issues.
I
Section 1202 (subd [a], par 1, cl a) of the Vehicle and Traffic Law proscribes double-parking, but subdivision (b) of section 1103 of that law makes subdivision (a) of section 1202 inapplicable “to hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway”. As defined by sections 117-a and 117-b of the Vehicle and Traffic Law a “hazard vehicle” includes a “vehicle owned and operated by a utility, whether public or private, used in construction, maintenance and repair of its facilities” and “hazardous operation” is defined as “The operation, or parking, of a vehicle on or immediately adjacent to a public highway while such vehicle is actually engaged in an operation which would restrict, impede or interfere with the normal flow of traffic.” The Telephone Company personnel having been engaged in an operation in a building off the highway, submission to the jury of the exception enacted by section 1103 would not appear justified even if the site of the accident had been outside New York City.
Inasmuch as it was within New York City, however, submission of that exception was error, not because of the absence of a supporting factual basis, but because of the inapplicability of the law. Section 1642 of the Vehicle and Traffic Law authorizes the City of New York by local law, ordinance, rule or regulation to supersede the provi *166 sions of the Vehicle and Traffic Law with respect, among other things, to parking, and the city has done just that. Section 190 of the City Traffic Regulation states explicitly that pursuant to section 1642 of the Vehicle and Traffic Law enumerated sections of that law, including section 1202, “shall not be effective in the City of New York.” While section 190 of the regulations makes no express reference to section 1103 of the Vehicle and Traffic Law, comparison of that section with section 22 of the regulations leaves no doubt that the latter is in substitution for the former.[4]
What governs double-parking in the City of New York is section 81 (subd [c], par 2) of the city regulations, the only exception to the proscription of which is that “a person may stand a commercial vehicle alongside a vehicle parked at the curb at such locations and during such hours that stopping, standing, or parking is not prohibited, while expeditiously loading and unloading, provided that there is no unoccupied parking space or designated loading zone within 100 feet that can be used for such standing.” It follows that both the Trial Judge and the Appellate Division were in error in holding section 1103 of the Vehicle and Traffic Law applicable, and that on the evidence presented, *167 which established that the Telephone Company truck had been in its double-parked position for some four and a half hours prior to the accident, plaintiffs were entitled to the charge they requested that as a matter of law the truck was illegally parked.
II
Conceding that negligence in double-parking could present a proximate cause issue for the jury, for which proposition it cited Daly v Casey (38 NY2d 808) and Naeris v New York Tel. Co. (5 NY2d 1009), the Appellate Division concluded that, because Quilter’s testimony that he did not see the repair truck until he began to exit the parking space was incredible as a matter of law and the photographs showed that the Continental proceeded in a straight line from the parking space to the south sidewalk, the jury could not have found the Telephone Company liable upon any rational consideration of the evidence, and that the presence of the truck was merely a “circumstance” of the accident and not a factor contributing to it.
In reaching the conclusion that it did the Appellate Division interpreted the photograph without reference to the other evidence in the case concerning the movement and path of the Continental, and in doing so encroached upon the jury’s prerogatives. Interpretation of the photographs in evidence involved evaluations of angle and perspective that are the essence of the jury’s function (cf. Maresca v Lake Motors, 32 AD2d 533, 534, affd 25 NY2d 716).
Nor can we agree that the verdict should turn on Quilter’s testimony as to when he first saw the repair truck. First, he did not claim that what caused him to lose control was surprise at the presence of the truck, but rather that if the truck was not double-parked he would not have hit the curb in manueuvering past it and lost control. Furthermore, any conclusion that the testimony was incredible as a matter of law requires interpretation of the words used by Quilter,[5] who spoke broken English, which is surely a *168 jury function. As we stated in Daly v Casey (38 NY2d 808, supra, citing Naeris v New York Tel. Co., 5 NY2d 1009, supra) : “However incredible the evidence may have been, as a practical matter it cannot be said that it was incredible as a matter of law, and therefore the complaint should not have been dismissed.”
The proof referred to in Daly concerned the presence of a Tidewater truck in the street, testified to by some seven witnesses, but found against by the majority at the Appellate Division in light of the absence from the field diagram made by the police at the scene of any indication of the truck and of the testimony of Tidewater personnel accounting for all of its trucks at the time of the accident in locations other than the accident scene. In Naeris we affirmed, without opinion, over a dissent at the Appellate Division, the majority holding of that court that the complaint could not be dismissed. Justice James B. M. Mc-Nally writing for the Appellate Division majority noted that, slender though the evidence of causation by the Telephone Company’s double-parked truck of the infant plaintiff’s injury by a passing vehicle may have been, it was within the competence of the jury to find the company’s violation of the traffic regulation a concurrent cause of the injury. Here Quilter’s deposition testimony, read at the trial, was that he turned the wheel as far as he could to maneuver around the truck, that as he turned the wheel back the car hit the curb and bounced causing him to rise up in the seat and that when he came down the car was skidding toward the table. That testimony was, moreover, consistent with the statement made by Quilter to the investigating police officer at the scene immediately after the accident that he swerved his car to avoid contact with the truck. Bearing in mind Quilter’s testimony and the measurements and distances involved, it cannot be said that there was no reasonable basis on which the jury could find that double-parking defendant’s vehicle was a concurrent cause. Nor is that result changed by the testimony of Quilter’s passenger, August, that the car proceeded in a straight line or the investigating police officer’s conclusion that Quilter lost control of his vehicle because of his inexperience as a driver. The officer’s opinion was not *169 binding upon the trier of fact and August’s testimony contradicting Quilter created an issue for the jury but did not make Quitter’s testimony incredible as a matter of law.
For the foregoing reasons, the order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Fuchsberg taking no part.
Order reversed, etc.

. The Appellate Division opinion (see CPLR 5612, subd [a]) states that, were it not dismissing it would grant a new trial for error in (1) the charge, not objected to by the Telephone Company, that violation of the double-parking regulation would be negligence rather than merely evidence of negligence, and (2) disclosing to the jury in a liability only trial that one of the plaintiffs had lost a leg in the accident. Both issues involve the exercise of discretion by the Appellate Division of a type not reviewable by this court. Accordingly, a new trial is required.

. Throughout this opinion the word “plaintiffs” is used to refer collectively to the individuals who sustained personal injury and the personal representative of the individual who was killed.

. He did not read the statute to the jury, but it is clear from the language of his charge that he was referring to subdivision (b) of section 1103 of the Vehicle and Traffic Law.

. Thus, subdivision (a) of section 1103 of the Vehicle and Traffic Law, which reads: “(a) The provisions of this title applicable to the drivers of vehicles upon the highways shall apply to drivers of all vehicles owned or operated by the United States, this state, or any county, city, town, district, or any other political subdivision of the state, except as provided in this section and subject to such specific exceptions as are set forth in this title with reference to authorized emergency vehicles” is closely tracked by subdivision (a) of section 22 of the regulations, which reads: “(a) The provisions of these regulations, including those established by traffic control devices, shall apply to the driver of any vehicle owned by or used in the service of the United States Government, this State, City, or any borough, and it shall be unlawful for any said driver to violate any of the provisions of these regulations except as otherwise permitted in these regulations or by state law” and subdivision (b) of the regulations, which makes the regulations inapplicable to equipment “actually engaged in work on a highway,” is identical in language with the first clause of the first sentence of subdivision (b) of section 1103 of the Vehicle and Traffic Law, except for the substitution of “these regulations” for “this title”. The failure to include in section 22 (subd [b]) the second clause of the first sentence of section 1103 of the Vehicle and Traffic Law is no contrary indication for the latter makes section 1202 of the Vehicle and Traffic Law inapplicable to hazard vehicles in particular situations, whereas regulation section 190 makes section 1202 of the Vehicle and Traffic Law inapplicable in the City of New York in any situation.

. The answer was: “I seen the * * * I went in the house and leave the goods, what I want shopping, when I got to the car, and started going forward, I seen the truck.”