OPINION OF THE COURT
John L. Bell, J.
Claimant David J. Cottingham (hereinafter claimant), upon experiencing operational difficulties with the tractor-trailer that he was driving southbound on Interstate Route 87 in the Town of Ulster, Ulster County, New York, on February 9, 1994, about 10:00 p.m., parked the vehicle on the shoulder of the highway, exited the vehicle and was thereafter struck by defendant’s snowplow. Defendant, relying upon McDonald v State of New York (176 Misc 2d 130), in which the court, construing Vehicle and Traffic Law § 1103 (b), held that an operator of a snowplow engaged in snow and ice removal upon a public highway is exempt from complying with the “rules of the road” set forth in title VII of the Vehicle and Traffic Law and therefore may be held liable in a civil action for money damages arising out of a motor vehicle accident only upon a demonstration of a “reckless disregard for the safety of others” rather than ordinary negligence, has moved for an order of dismissal of the claim pursuant to CPLR 3211 and for summary judgment pursuant to CPLR 3212.
In support of his claim for damages for personal injuries, claimant contends that after he had parked the tractor-trailer on the shoulder of the Thruway, he crawled underneath the vehicle to determine whether its fuel line had frozen. He further asserts that upon emerging from underneath the vehicle, he was struck by defendant’s snowplow. Defendant maintains that the operator of the snowplow, consistent with Thruway priorities to keep shoulders clear during winter storm operations, was operating the Thruway’s snowplow half in the driving lane and half on the shoulder while working in tandem with another snowplow for the purpose of cleaning both the driving lanes and the shoulders of the highway as part of *930 winter maintenance operations. Defendant further maintains that all emergency and operating lights on the subject snowplow, which was also equipped with a wing plow, were activated and in full functional operation before the accident and that claimant’s failure to place reflective warning devices behind the tractor-trailer was the proximate cause of the accident.
Subsequent to the decision in McDonald v State of New York (176 Misc 2d 130, supra), which was decided in February 1998, two other Judges of the Court of Claims have followed the scholarly opinion of Judge Collins in McDonald and applied the reckless disregard for the safety of others standard set forth in Vehicle and Traffic Law § 1103 (b) in deciding negligence claims involving snowplows on State highways (see, Gifford v State of New York, Ct Cl, Apr. 6, 1999, Midey, J., claim No. 95815, motion No. M-58452, cross motion No. CM-58508; Wilson v State of New York, Ct Cl, Sept. 30, 1998, McNamara, J., claim No. 93508). In another unreported post-McDonald case involving a highway grader “equipped with a plow wing which was removing/pushing snow from the south shoulder of the roadway” (Fox v State of New York, Ct Cl, May 29, 1998, claim No. 95028), Judge Corbett found liability against the State predicated upon ordinary negligence principles and specifically observed that the State had not urged the applicability of Vehicle and Traffic Law § 1103 (b).
Contrary to the decision in McDonald v State of New York (176 Misc 2d 130, supra) and its progeny, this court holds that the liability of a snowplow operator who is simply engaged in customary snow and ice removal on a public highway in the State of New York is predicated upon ordinary negligence principles rather than upon a reckless disregard for the safety of others standard.
In resolving the difficult issue of statutory construction confronting the court in McDonald v State of New York (176 Misc 2d 130, supra), and now, this court in the present case, both Vehicle and Traffic Law §§ 1103 and 1104 must be considered.
Section 1103 of title VII of the Vehicle and Traffic Law provides:
“(a) The provisions of this title applicable to the drivers of vehicles upon the highways shall apply to drivers of all vehicles owned or operated by the United States, this state, or any county, city, town, district, or any other political subdivision of the state, except as provided in this section and subject to such *931 specific exceptions as are set forth in this title with reference to authorized emergency vehicles.
“(b) Unless specifically made applicable, the provisions of this title, except the provisions of sections eleven hundred ninety-two through eleven hundred ninety-six of this chapter, shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway nor shall the provisions of subsection (a) of section twelve hundred two apply to hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles when traveling to or from such hazardous operation. The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others” (emphasis added).
Section 1104, in part, provides:
“(a) The driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
“(b) The driver of an authorized emergency vehicle may:
“1. Stop, stand or park irrespective of the provisions of this title;
“2. Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation;
“3. Exceed the maximum speed limits so long as he does not endanger life or property;
“4. Disregard regulations governing directions of movement or turning in specified directions.
“(c) Except for an authorized emergency vehicle operated as a police vehicle or bicycle, the exemptions herein granted to an authorized emergency vehicle shall apply only when audible signals are sounded from any said vehicle while in motion by bell, horn, siren, electronic device or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp so that from any direction, under normal atmospheric conditions from a distance of five hundred *932 feet from such vehicle, at least one red light will be displayed and visible ** * *
“(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others” (emphasis added).
A snowplow specifically falls within the definition of a “hazard vehicle” under Vehicle and Traffic Law § 117-a,[2] while authorized emergency vehicles, referred to in Vehicle and Traffic Law § 1104, include such vehicles as an ambulance, a police vehicle, a fire vehicle, a civil defense emergency vehicle and an emergency ambulance service vehicle (Vehicle and Traffic Law § 101).
Section 1104 of the Vehicle and Traffic Law was enacted in 1959 (L 1959, ch 775), and subdivision (e) of section 1104, recited above, has never been amended. Section 1103 of the Vehicle and Traffic Law was also enacted by chapter 775 of the Laws of 1959 but did not contain any provision that corresponded to Vehicle and Traffic Law § 1104 (e). In 1974, the Legislature amended Vehicle and Traffic Law § 1103 (b) (L 1974, ch 223, § 1) to add the provision: “The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others.” Thus, when the accident giving rise to the present claim occurred, the above-recited provision of Vehicle and Traffic Law § 1103 (b) and the previously recited provision of Vehicle and Traffic Law § 1104 (e) were essentially identical with respect to operative language.
Prior to 1974, and thereafter following the recited amendment to Vehicle and Traffic Law § 1103 (b), until the 1998 deci *933 sion in McDonald v State of New York (176 Misc 2d 130, supra), liability in negligence cases involving snowplow accidents on public highways in the State of New York was consistently decided, either explicitly or implicitly, upon ordinary negligence principles (see, e.g., Del Vecchio v County of Cayuga, 14 NY2d 517; Cherico v City of New York, 88 AD2d 889; Insurance Co. v City of Syracuse, 73 AD2d 813; Bartlett v State of New York, 40 AD2d 267, lv denied 32 NY2d 610; Kelly v State of New York, 24 AD2d 831, affd, 21 NY2d 901; Teichner v Town of Niskayuna, 282 App Div 820; Conklin v County of Orange, 277 App Div 930; Neddo v State of New York, 275 App Div 492; Hemmingway v Town of Dannemora, 269 App Div 798; Reeves v State of New York, Ct Cl, Feb. 24, 1997, Hanifin, J., claim No. 93317; Finkelstein v State of New York, Ct Cl, Dec. 5, 1996, Bell, J., claim No. 85149; Kraus v State of New York, 35 Misc 2d 731; La Plante v State of New York, 200 Misc 396).
In the unreported Reeves and Finkelstein cases (supra), the State failed, as it did in Fox v State of New York (Ct Cl, May 29, 1998, Corbett, J., claim No. 95028, supra), to urge that liability should be predicated only upon proof of defendant’s reckless disregard for the safety of others rather than upon proof of ordinary negligence. Thus, while the State, in McDonald v State of New York (176 Misc 2d 130, supra), defended against liability in a snowplow accident on a State highway on a reckless disregard for the safety of others standard, it defended against liability in Fox v State of New York (supra), in 1998, Reeves v State of New York (supra), in 1997, and Finkelstein v State of New York (supra), in 1996, upon ordinary negligence principles.
This court’s research indicates that the courts of our sister States have uniformly decided cases involving highway snowplow accidents upon ordinary negligence principles (see, Annotation, Liability for Injury or Damage Caused by Snowplowing or Snow Removal Operations and Equipment, 83 ALR4th 5). Thus, it must be determined whether Vehicle and Traffic Law § 1103 (b) mandates that in negligence actions involving snowplow accidents on public highways our courts must decide cases upon a reckless disregard for the safety of others standard rather than upon ordinary negligence principles, thereby requiring the State of New York to stand apart from its sister States.
In opposing defendant’s motion for summary judgment, claimant argues that the language of Vehicle and Traffic Law § 1103 (b), which provides that any person, team or operator of *934 a motor vehicle or other equipment while actually engaged in work on a highway shall not be relieved “from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons” (emphasis added) relates to a general negligence standard. While, upon initial analysis, claimant’s argument is appealing (see, Petosa v City of New York, 52 AD2d 919, 920), it disregards the statutory provision that follows, which reads, “nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others.”
As previously recited, section 1104 (e) of the Vehicle and Traffic Law, which relates to authorized emergency vehicles, provides: “The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others” (emphasis added). In Saarinen v Kerr (84 NY2d 494), the Court of Appeals held that “Vehicle and Traffic Law § 1104 (e) precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness” (Saarinen v Kerr, supra, at 497; accord, Campbell v City of Elmira, 84 NY2d 505). Thereafter, in Szczerbiak v Pilat (90 NY2d 553), the Court of Appeals, in discussing the privilege granted to authorized emergency vehicles, further explained: “[S]ection 1104 (e) of the statute provides that ‘[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others’ (Vehicle and Traffic Law § 1104 [e]). This ‘reckless disregard’ standard of liability was interpreted and applied by this Court in the companion decisions of Campbell v City of Elmira (84 NY2d 505) and Saarinen v Kerr (84 NY2d 494, supra). In Saarinen, we equated ‘reckless disregard’ with the well-established tort concept of recklessness, which we defined as the conscious or intentional doing of an act of an unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow, and done with conscious indifference to the outcome (Saarinen v Kerr, supra, at 501; accord, Campbell v City of Elmira, supra, at 510)” (Szczerbiak v Pilot, supra, at 556-557). The provision of Vehicle and Traffic Law § 1103 (b) that any person or team or any operator of a *935 motor vehicle or other equipment while actually engaged in work on a highway shall not be relieved “from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others” (emphasis added) must obviously be given the same construction as found by the Court of Appeals with respect to essentially identical language of Vehicle and Traffic Law § 1104 (e), which reads, “from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others'” (emphasis added). Thus, the recited decisions of the Court of Appeals establish that claimant’s reliance upon the words “due regard” as establishing a standard relating to ordinary negligence is misplaced. At this juncture, it should also be observed that the Court of Appeals, in Maltese v Westinghouse Elec. Corp. (89 NY2d 955), advised that it had adopted a gross negligence standard with respect to conduct required to establish “reckless disregard for the safety of others.” Specifically, the Court wrote: “In Saarinen v Kerr (84 NY2d 494) we addressed the level of conduct required to establish ‘reckless disregard for the safety of others’ under Vehicle and Traffic Law § 1104 (e). We adopted a gross negligence standard, requiring that ‘ “the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow” and has done so with conscious indifference to the outcome’ {id., at 501, quoting Prosser and Keeton, Torts § 34, at 213 [5th ed]). Applying that standard here, we conclude that the evidence is insufficient to support the jury’s finding of reckless disregard for the workers’ safety.” (Maltese v Westinghouse Elec. Corp., 89 NY2d, supra, at 956-957.)[3]
Both the court in McDonald v State of New York (176 Misc 2d 130, supra) and this court agree that the present language of Vehicle and Traffic Law § 1103 (b), which was in effect on the date of the present claimant’s accident, is ambiguous and that both a review of the statute’s purpose and the application of rules of statutory construction are required.
By the specific terms of Court of Claims Act § 8, the State waived its immunity from liability and assumed the same li *936 ability under the Vehicle and Traffic Law as an individual or corporation (see, State of New York v Popricki, 89 AD2d 391; Adams v State of New York, 264 App Div 978; 62 NY Jur 2d, Government Tort Liability, § 58). Thus, prior to the enactment of both Vehicle and Traffic Law § 1103 (b) and § 1104 (e), the State, municipal corporations and other political subdivisions were liable in negligence actions for the ordinary acts of negligence of any person or teams who had operated or used a motor vehicle or other piece of equipment of the subject governmental entity on a public highway or thoroughfare with its permission, expressed or implied (Burmaster v State of New York, 7 AD2d 775, affd 7 NY2d 65; Adams v State of New York, 269 App Div 482, mod 270 App Div 1062, affd 296 NY 654; 62 NY Jur 2d, op. cit., § 58). By virtue of Vehicle and Traffic Law § 1103 (b), the general rule relating to liability for ordinary negligence when a motor vehicle or other equipment of the State, a municipal corporation or other political subdivision is involved in an accident on a highway has no application while the motor vehicle or other equipment is “actually engaged in work on a highway,” for the Legislature has substituted a reckless disregard for the safety of others standard. This court cannot agree, however, with a conclusion, especially in light of the less than lucid history of Vehicle and Traffic Law § 1103 (b), that the Legislature intended that a hazard vehicle, such as a snowplow, while being used on a public highway, is exempt from the application of ordinary negligence principles.
The basic goal of any statutory construction is to ascertain the intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). A construction that would result in absurdity must be rejected (McKinney’s Cons Laws of NY, Book 1, Statutes § 145). Moreover, the common law is never abrogated by implication, and the rules of the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires. As clearly stated: “Where a change in the common law is to be effectuated the legislative intent to do so must be clearly and plainly expressed. When, therefore, a statute is intended to abrogate a common law right or to confer a right not vested by the common law, it will be so construed as not to go beyond the letter; and not even to that extent unless it appears to be according to the spirit and intention of the act. If a statute admits of two interpretations, that which more nearly conforms to the rules of the common law is to be adopted, and not only is an enactment to be construed with reference to the common law, but it *937 is presumed that the Legislature intended to make no further innovation upon common law rights than the particular case requires. A statute must be read in connection with the common law existing at the time; and if the common law rule and the statute can stand together, the statute will be construed so as to effectuate both, and should not be so construed as to abolish the common-law rule” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [b], at 463-465). It is also manifest that:
“[t]he courts presume that a radical change in the common law by statute will be expressed with the clearness which the importance of the subject demands, or so that its meaning is unmistakable, especially when the change affects title to property or rules of liability. The courts will not construe -a statute as abolishing a common-law right in the absence of a clear intention on the part of the Legislature.
“An intention of making an innovation in a long established rule of law is not imputed to the Legislature in the absence of a clear manifestation of such intention. This rule has even greater validity in cases where property rights and jurisdictional questions are concerned. Especially is this so, when the change opens the path for hardship, injustice, absurdity, inequality, or other objectionable consequences. This principle is analogous to the doctrine that statutes in derogation of the common law are to be strictly construed” (McKinney’s Cons Laws of NY, Book 1, Statutes § 153, at 331-333 [emphasis added]).
In the instant case, such fundamental rules of statutory construction form stepping stones on a path to the citadel of ordinary common-law negligence. The court in McDonald v State of New York (176 Misc 2d 130, supra) acknowledged that the first sentence of Vehicle and Traffic Law § 1103 (b) appears to create two separate classes of vehicles, some of which are exempt from title VII in its entirety and some of which are subject to all of the provisions of title VII (Rules of the Road), except for Vehicle and Traffic Law § 1202 (a), and that such literal construction was applied by the First Department in the case of Somersall v New York Tel. Co. (74 AD2d 302, 307, revd on other grounds 52 NY2d 157).[4] However, after tracing the legislative history and combining such history with certain rules of statutory construction, the court in McDonald concluded that “a snowplow engaged in the task of plowing snow *938 from a highway is a vehicle engaged in work on a highway and, therefore, subject to the ‘reckless disregard’ standard of care prescribed [in Vehicle and Traffic Law § 1103 (b)]” (McDonald v State of New York, 176 Misc 2d 130, 139, supra).
The statutes exempting operators of certain vehicles from the rules of the road and holding certain operators only to a reckless disregard standard are both convoluted and ambiguous. Reading Vehicle and Traffic Law § 1103 (b) and § 1104 (e) together and construing the limitations on liability in such statutes strictly and narrowly (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 153; Seligman v Friedlander, 199 NY 373, rearg denied 200 NY 505) reveals a discernable pattern of protection descending from police vehicles (highest level of protection) through other “authorized emergency vehicles” (less protection) to hazard vehicles (even less protection). With respect to each protected driver category, two issues emerge: (1) the rules of the road from which the driver is exempt, and (2) the applicable standard of care.
Vehicle and Traffic Law § 1104 provides a qualified privilege to drivers of authorized emergency vehicles when involved in an emergency operation. Such drivers are given broad discretion to disregard certain ordinary rules of normal prudent and responsible driving (Vehicle and Traffic Law § 1104 [b]; see, Szczerbiak v Pilat, 90 NY2d 553, 556-557, supra). Moreover, when engaged in an emergency situation, the standard of care to which such a driver is held is one of “reckless disregard” (Vehicle and Traffic Law § 1104 [e]; see, e.g., Saarinen v Kerr, 84 NY2d 494, supra; Campbell v City of Elmira, 84 NY2d 505, supra). There is, however, an important distinction in the statute between police vehicles and other authorized emergency vehicles such as ambulances, fire trucks and correction vehicles (see, Vehicle and Traffic Law § 101). A police vehicle receives the qualified privilege (i.e., broad rules of road exemption and reckless disregard standard) when it is being operated as an emergency vehicle, whether or not its lights and siren are operating (Vehicle and Traffic Law § 1104 [c]; see, Szczerbiak v Pilat, 90 NY2d 553, supra). Other emergency vehicles must have a light activated and a siren (or similar device) operating in order to receive the qualified privilege (Vehicle and Traffic Law § 1104 [c]).
The rationale for such a distinction between police vehicles and other authorized emergency vehicles is apparent. There are occasions when it is more prudent for police to respond to an emergency without lights and sirens (see, e.g., Szczerbiak v *939 Pilot, 90 NY2d 553, supra). Other situations can be envisioned where responding with lights and sirens could put victims in greater danger such as when a robbery is in progress. Drivers of other emergency vehicles are not faced with such difficult discretionary decisions regarding the safety of people since they are generally concerned primarily with arriving as soon as practicable at a particular destination (hospital or scene of a fire) in order to achieve their objective. Thus, for drivers of other emergency vehicles to be entitled to receive the qualified privilege, it is incumbent upon them to use the warning devices in their vehicles so as to put other motorists on notice of their presence and the emergency situation (see, Vehicle and Traffic Law § 1144).
The rules of the road from which drivers are exempt and the heightened standard of care continue to constrict as the analysis turns away from those faced with the most perilous situations to situations involving other vehicles. Vehicle and Traffic Law § 1103 (b) exempts persons and vehicles actually engaged in road work from the rules set forth in title VII of the Vehicle and Traffic Law (except sections 1192 through 1196, which relate to alcohol- and drug-related offenses). It is significant that such exception applies only in an area of actual work on the highway. An area of actual work should be narrowly construed. Vehicle and Traffic Law § 160 (added by L 1984, ch 92, § 1), defines a “work area” as follows: “That part of a highway being used or occupied for the conduct of highway work, within which workers, vehicles, equipment, materials, supplies, excavations, or other obstructions are present.” In a memorandum in support of the adoption of Vehicle and Traffic Law § 160, the State Department of Transportation wrote:
“Purpose: To make a technical correction to Chapter 249 of the Laws of 1983 relating to reduced speeds in highway construction or maintenance work zones.
“Summary of Provisions: The subject bill adds a new section 160 to the Vehicle and Traffic Law to define a work area and amends Section 1180(e) of such law requiring drivers to reduce their speed while driving through a highway construction or maintenance work zone, by incorporating the term ‘work area’.
“Existing Law: Chapter 249 of the Laws of 1983 required drivers to reduce their speed while driving through a highway construction or maintenance work area, but did not define a work zone or work area.
“Statement in Support: One of the major problems that an individual faces when he/she is working on the highway (i.e., *940 marking pavement, resurfacing, general cleanup, etc.) is caused by drivers who fail to reduce their speed in maintenance and construction work areas in accordance with posted reduced speed limit signs.
“By defining the term work area, the bill will assist law enforcement officials in enforcing the. law requiring drivers to reduce their speed when driving through a construction or maintenance work area, and thereby protect the safety of highway workers” (1984 McKinney’s Session Laws of NY, at 3130).
Significantly, as set forth in Vehicle and Traffic Law § 160, the Department of Transportation equated a “highway construction or maintenance work zone” with a “work area.”
In construing Vehicle and Traffic Law § 1103 (b), this court also observes that the phrase “during all phases of such work” in the provision of Vehicle and Traffic Law § 1103 (b) that reads, “from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons” (emphasis added) lends support to a conclusion that the Legislature, in enacting the recited provision of Vehicle and Traffic Law § 1103 (b), contemplated a specific work area or work zone rather than creating a roaming area of exemptions for snowplow operators during the course of snowplowing operations. Areas of road work are limited, well marked and governed by a host of Department of Transportation regulations to ensure notice to drivers approaching work areas or work zones where work is in progress, and further to provide such drivers with heightened awareness to proceed cautiously (see, 17 NYCRR parts 290, 300-302). The limited exception from the rules of the road within such well-defined areas is logical because the very nature of the work being performed in such areas frequently requires that the people and vehicles engage in activities inconsistent with the rules of the road in order to complete their work (see, Petosa v City of New York, 52 AD2d 919, 920-921, supra). The second sentence of Vehicle and Traffic Law § 1103 (b) instructs that persons, teams, motor vehicles and other equipment while actually engaged in work on a highway receive the further benefit of the reckless disregard standard. The heightened standard thus applies to the limited, well-defined and controlled area where workers engage in potentially dangerous work in an area that is subject to substantial regulation and for which significant notice is given to approaching motorists.
Hazard vehicles that are engaged in hazard operations are, according to the statutory language, exempted only from the *941 provisions of Vehicle and Traffic Law § 1202 (a) (see, Somersall v New York Tel. Co., 74 AD2d 302, 307-309, revd on other grounds 52 NY2d 157, supra). The scope of the exemption from the rules of the road is thus narrowed further to a mere exemption from rules regarding stopping, standing and parking (see, Vehicle and Traffic Law § 1202). The limited exemption regarding stopping, standing and parking provided by this portion of the statute is logical because hazard vehicles include, among others, vehicles operated by utilities, tow trucks and rural letter carriers, whose operators must stop, stand or park their vehicles on or near the highway to complete their work. Moreover, and significantly, the language of Vehicle and Traffic Law § 1103 (b) does not explicitly make the reckless disregard standard of care applicable to hazard vehicles. Therefore, the operators of hazard vehicles, while being exempted from Vehicle and Traffic Law § 1202 (a), should be deemed held to the ordinary negligence standard of care. There is no compelling reason to read a reckless disregard standard into the standard of care regarding the operators of hazard vehicles when the Legislature has not explicitly included them, especially when a clear and specific legislative intent to override the common law must be manifested (Hechter v New York Life Ins. Co., 46 NY2d 34; Matter of Sullivan Co., 289 NY 110).
In summary, Vehicle and Traffic Law §§ 1103 and 1104 create four general categories of vehicles whose drivers or operators receive special treatment. The categories, in order descending from the most protected to the least, are as follows:
1. Police vehicles involved in emergency operation with or without lights and audible signals. Receive broad discretion to disregard a wide range of normal rules of the road. Standard of care: Reckless disregard.
2. Other emergency vehicles (e.g., ambulance, fire truck, etc.) involved in emergency operation and with lights and audible signals activated. Receive broad discretion to disregard a wide range of normal rules of the road. Standard of care: Reckless disregard.
3. Work vehicles actually engaged in work on the highway receive exemption from the rules in title VII of the Vehicle and Traffic Law (except sections 1192 through 1196) and construed to be within a defined work area and not merely running the roads. Standard of care (when within work area): Reckless disregard.
4. Hazard vehicles actually engaged in hazardous operation. Receive exemption from rules in Vehicle and Traffic Law § 1202 (a). Standard of care: Ordinary negligence.
*942 Where then does a snowplow fit in this analysis? Clearly, a snowplow does not fit into category 1 or 2. In certain limited situations, it might fall within category 3, such as when a snowplow operator is clearing a construction site (but not for the normal running of the roads). This court determines that the operator of a snowplow, to the extent that a snowplow falls within any of the categories, would generally receive the limited benefit of category 4 (see, Vehicle and Traffic Law § 117-a [defining “Hazard vehicle”], and Vehicle and Traffic Law § 117-b [defining “Hazardous operation”]).
Another salient reason not to include the operator of a snowplow or other hazard vehicle within the ambit of protection afforded by the reckless disregard standard clearly exists. If the drivers of vehicles in category 4 are entitled to receive the reckless disregard standard they will, in essence, receive more protection than the drivers or operators of any other vehicles, indeed even the drivers of police vehicles. There are no lights or siren requirements in the provisions of Vehicle and Traffic Law § 1103, such as apply to other emergency vehicles (Vehicle and Traffic Law § 1104 [c]). Nor is there a confined area, such as seems to apply to work vehicles. Allowing the operator of a vehicle such as a snowplow (or a utility truck or a rural letter carrier) more protection than the driver of an ambulance or fire truck seems absurd, is inconsistent with common sense and would result in a draconian decision that is not compelled by the statute. No compelling reason exists to allow the operator of a snowplow or other hazard vehicle to roam the roads with impunity from acts of ordinary negligence.
Accordingly, defendant’s motion to dismiss and for summary judgment is denied.

. Other enumerated hazard vehicles under Vehicle and Traffic Law § 117-a include “[e]very vehicle owned and operated or leased by a utility, whether public or private, used in the construction, maintenance and repair of its facilities, every vehicle specially equipped or designed for the towing or pushing of disabled vehicles, every vehicle engaged in highway maintenance * * * and vehicles driven by rural letter carriers while in the performance of their official duties.”

. A definition of “gross negligence” is set forth in PJI3d 2:10A, and a definition of “reckless disregard for the safety of others” is set forth in PJI3d 2:275.2.

. Generally, in the construction of statutes, the intention of the Legislature should be first sought from a literal reading of the statute itself (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]).