[700 NYS2d 573]

BETTY A. RILEY et al., Appellants, v COUNTY OF BROOME et al., Respondents.

Third Department, January 6, 2000

APPEARANCES OF COUNSEL

*Thomas F. Cannavino,* Endicott, for appellants.

*Robert G. Behnke, County Attorney* of Broome County, Binghamton, for respondents.

## OPINION OF THE COURT

Carpinello, J.

In the early morning hours of July 22, 1992, defendant Garwood A. Young, an employee of the Broome County Highway Division, was dispatched to sweep up excess stone and other debris as part of a resurfacing project on West Colesville Road in the Town of Kirkwood, Broome County. Operating a mechanical street sweeper owned by defendant County of Broome, he began sweeping West Colesville Road at approximately 7:30 A.M. According to Young's trial testimony, prior to beginning his sweeping activities he placed two "Men Working" signs at each end of his defined work area. He operated the street sweeper half in the driving lane of the road and half on the shoulder at a rate of two to three-miles per hour.

Approximately two hours into his work, Young was rear-ended by plaintiff Betty A. Riley (hereinafter plaintiff). According to Young, at the time of impact the brooms were down and all lights and flashers were functional and operating. According to plaintiff, as she crested a hill, she saw a "huge patch of fog," lifted her foot off the accelerator and hit the street sweeper. The "fog" was in fact a cloud of dust and dirt created by the operation of the street sweeper. Plaintiff denied observing any lights on the sweeper.

Plaintiff, and her husband derivatively, commenced this action to recover for her injuries. After an unsuccessful defense motion to dismiss the complaint on the ground that plaintiff's negligence was the sole cause of the accident (*see, Riley v County of Broome*, 256 AD2d 899), the case proceeded to trial. At the close of plaintiffs' proof, defendants moved to dismiss the complaint on the ground that plaintiffs had not established, *inter alia*, any reckless disregard for the safety of others on the part of any defendant, citing Vehicle and Traffic Law § 1103 (b). Although the motion was denied, Supreme Court charged the jury, over plaintiffs' objection, that the reckless disregard standard was the proper standard of care upon which to measure Young's operation of the street sweeper that day. The jury found that Young was not reckless in the manner in which he operated the street sweeper and rendered a verdict in favor of defendants, prompting this appeal.

At issue is the meaning and effect of Vehicle and Traffic Law § 1103 (b), namely, whether it requires the reckless disregard

standard of care to be applied to the operator of a mechanical street sweeper engaged in maintenance work on a public highway. With repeated references and analogies to Vehicle and Traffic Law § 1104 (applicable to drivers of authorized emergency vehicles), plaintiffs claim that Young was not involved in a public emergency or public safety task and, therefore, this Court should not extend the reckless disregard standard presently applicable to emergency vehicle operators to vehicles such as that involved in this case. While the purpose of Vehicle and Traffic Law § 1103 (b) may be distinct from that of Vehicle and Traffic Law § 1104, we are nevertheless convinced, upon our review of the statute and its legislative history, that Vehicle and Traffic Law § 1103 (b) does impose a reckless disregard standard, rather than mere negligence, on operators of "hazard vehicles" engaged in "hazardous operation[s]" on highways and that Young's operation of the street sweeper is encompassed within this standard.

Vehicle and Traffic Law § 1103 (b) provides as follows: "Unless specifically made applicable, the provisions of this title [title VII-rules of the road], except the provisions of sections eleven hundred ninety-two through eleven hundred ninety-six of this chapter [pertaining to alcohol and drug-related offenses], shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway nor shall the provisions of subsection (a) of section twelve hundred two [prohibiting stopping, standing or parking] apply to hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles when traveling to and from such hazardous operation. The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others."

To be sure, a mechanical street sweeper falls within the definition of a "hazard vehicle" (Vehicle and Traffic Law § 117-a)[1] and street sweeping falls within the definition of "hazardous

---

1. Vehicle and Traffic Law § 117-a reads: "Every vehicle owned and operated or leased by a utility, whether public or private, used in the construction, maintenance and repair of its facilities, every vehicle specially equipped

operation" (Vehicle and Traffic Law § 117-b).[2] A literal reading of the statute might lead one to conclude that a street sweeper is exempt only from the specific provisions of Vehicle and Traffic Law § 1202 (a), which pertain to prohibitions against standing, stopping and parking. Moreover, as the second sentence of the statute excludes any reference to "hazard vehicles" or "hazardous operation," a literal reading of this portion of the statute might also lead one to conclude that Young's operation of the street sweeper is not measured by his "reckless disregard for the safety of others." Upon our review of the legislative history of this statute, however, we are unconvinced that such a literal construction advances the Legislature's purpose (see, McKinney's Cons Laws of NY, Book 1, Statutes § 111). Fundamentally, the overriding rule of statutory construction is to give effect to the intent of the Legislature (see, McKinney's Cons Laws of NY, Book 1, Statutes § 92).

We begin by noting that when originally enacted in 1957, the Legislature intended that the exemption from the "rules of the road" contained in Vehicle and Traffic Law § 1103 (b) "refer[ ] to those who build highways, repair *or maintain them*, paint the pavement markings, remove the snow, sand the pavement and do similar work" (1954 NY Legis Doc No. 36, at 35 [emphasis supplied]; see, *Petosa v City of New York*, 52 AD2d 919, 920). Here, Young was indeed maintaining a public highway when he was sweeping up excess stone. Thus, his operation of the street sweeper is encompassed within the original purpose of the statute, i.e., the Legislature intended that he be exempt from the rules of the road.

When Vehicle and Traffic Law § 1103 (b) was originally enacted, no reference was made to either "hazard vehicles" or "hazardous operation." Rather, the statute's second clause relating to an exemption from the "stopping and standing" provisions of Vehicle and Traffic Law § 1202 (a) applied "to vehicles operated by *public service corporations*[3] while actually engaged in work on the installation or maintenance of *public service fa-*

---

or designed for the towing or pushing of disabled vehicles, every vehicle engaged in highway maintenance, or in ice and snow removal where such operation involves the use of a public highway and vehicles driven by rural letter carriers while in the performance of their official duties."

2. Vehicle and Traffic Law § 117-b reads: "The operation, or parking, of a vehicle on or immediately adjacent to a public highway while such vehicle is actually engaged in an operation which would restrict, impede or interfere with the normal flow of traffic."

3. A public service corporation is typically a railroad, telephone, gas, electric light, heat or power company "which, on account of special franchises

*cilities* on or adjacent to a highway" (L 1957, ch 698, § 4 [emphasis supplied]). It was not until the passage of the Emergency Light Bill (*see*, L 1970, ch 197) that the Legislature added Vehicle and Traffic Law §§ 117-a and 117-b defining "hazard vehicles" and "hazardous operation" (*see*, L 1970, ch 197, §§ 6, 7) and simultaneously replaced references to public service corporations and public service facilities in the instant statute with hazard vehicles and hazardous operation (*compare*, L 1957, ch 698, § 4, *with* L 1970, ch 197, § 12). This amendment has rendered the statute ambiguous and has caused confusion and debate over its meaning and effect (*compare*, *Somersall v New York Tel. Co.*, 74 AD2d 302, 307, *revd on other grounds* 52 NY2d 157; *Cottingham v State of New York*, 182 Misc 2d 928 [Ct Cl, Nov. 23, 1999, Bell, J.], *with Gifford v State of New York*, Ct Cl, Apr. 6, 1999, Midey, J.; *Wilson v State of New York*, Ct Cl, Sept. 30, 1998, McNamara, J.; *McDonald v State of New York*, 176 Misc 2d 130; *see also*, *Petosa v City of New York*, *supra*).

Given the limited definition of a public service corporation, the substitution of "hazard vehicles" and "hazardous operation" in 1970 significantly broadened the type of operators and vehicles exempt from Vehicle and Traffic Law § 1202 (a). However, vehicles once clearly exempt from *all* rules of the road—such as street sweepers—now fell within the definition of hazard vehicles, seemingly exempt *only* from Vehicle and Traffic Law § 1202 (a). Since just about every State or municipal vehicle or piece of equipment engaged in work on a highway falls within the definition of hazard vehicle, an interpretation of the statute which exempts operators of such vehicles from Vehicle and Traffic Law § 1202 (a) *only* would render the first sentence of the statute a nullity (*see*, *Wilson v State of New York*, *supra*; *McDonald v State of New York*, *supra*, at 138).

Given the context in which the statute was amended—the Legislature was responding to public confusion and uncertainty over the meaning of flashing colored lights on various vehicles (*see*, Mem of Assembly, Bill Jacket, L 1970, ch 197; Mem of Attorney General, Bill Jacket, L 1970, ch 197)—we can ascribe no legislative intent, other than mere inadvertence, to change the overall purpose of the statute vis-à-vis rules of the road exemptions. Indeed, had this been the intention of the Legislature, it surely would be reflected in the legislative history surrounding the Emergency Light Bill. Yet, "[t]he process by which the

conferred on them, owe a duty to the public which they may be compelled to perform" (113 NY Jur 2d, Words and Phrases, at 383).

language relating to hazard vehicles was added [to Vehicle and Traffic Law § 1103 (b)] provided no indication of a change in legislative intent" (Sherman, *1997-98 Survey of New York Law*, 49 Syracuse L Rev 791, 799 [1999], citing *McDonald v State of New York, supra*).

To the contrary, the sole purpose in amending Vehicle and Traffic Law § 1103 (b) at this time was to make a "technical reference change[ ]" to the statute (Budget Report on Bills, Bill Jacket, L 1970, ch 197), i.e., "to conform the rules of the road provisions to the new lighting requirements" (Mem of Dept of Motor Vehicles, Bill Jacket, L 1970, ch 197). The following statement in an Executive Department, Office for Local Government, letter in support of the legislation is of particular significance on the issue of the Legislature's intent. It reads: "[The bill] makes conforming amendments to Vehicle and Traffic Law, §§ 1103 and 1104 which exempt *hazard vehicles* and authorized emergency vehicles *from the 'rules of the road' when such vehicles are engaged in hazardous operations* or emergency operations respectively" (Mem of Executive Dept, Off for Local Govt, Bill Jacket, L 1970, ch 197 [emphasis supplied]). Thus, although Vehicle and Traffic Law § 1103 (b) has been interpreted as setting forth two *separate* categories of operators and equipment—"work vehicles" and "hazard vehicles" (*see, e.g., Somersall v New York Tel. Co., supra*, at 307; *Gifford v State of New York, supra*; *Wilson v State of New York, supra*) and applying the rules of the road exemption to the former class only—(*see, Somersall v New York Tel. Co., supra*, at 307; *Cottingham v State of New York, supra*), its legislative history does not support this particular delineation of vehicles or application of the rules of road exemption.[4]

This leads us to the most critical amendment to Vehicle and Traffic Law § 1103 (b) for the purpose of the current controversy. Indeed, four years after the Emergency Light Bill was passed, the statute was again amended and the language indicating that "such persons or teams or such operators of motor vehicles or other equipment" will not be protected "from the consequences of their reckless disregard for the safety of others" was added (L 1974, ch 223, § 1). Like the 1970 amend-

---

4. The Legislature did in fact create four categories of vehicles under the Emergency Light Act, namely, authorized emergency vehicles, hazard vehicles, privately owned vehicles of volunteer firefighters and privately owned vehicles of ambulance and rescue squad members (*see*, Mem of Assembly, Bill Jacket, L 1970, ch 197). No specific "work" category was included or even intimated at this time.

ment, no significant legislative change in the over-all purpose or application of the statute vis-à-vis the types of operators and vehicles to be exempt from the rules of the road can be attributed to this amendment. To the contrary, the addition of the second sentence was to simply correct a "pure oversight" in the statute (Mem of State Executive Dept, Div of State Police, 1974 McKinney's Session Laws of NY, at 1969), namely, the failure to specifically recite the applicable standard of care. Of note, the then Attorney General submitted a memorandum to the Governor in support of the amendment, characterizing it as extending the standard of care applicable to drivers of emergency vehicles "to persons engaged in maintenance and hazardous operations" (Mem of Attorney General, Bill Jacket, L 1974, ch 223; *see also*, Mem of Dept of Motor Vehicles, Bill Jacket, L 1974, ch 223).

All of this leads us to the conclusion that the Legislature originally intended that Vehicle and Traffic Law § 1103 (b) exemption from the "rules of the road" apply to those engaged in highway maintenance, that this intent was never repudiated despite the ambiguous language change in 1970 and that in 1974 the Legislature further intended to make clear that those engaged in highway maintenance should be exposed to liability for their reckless disregard of the safety of others.[5] Because Young's operation of the street sweeper constituted highway maintenance, we find that Supreme Court correctly charged the jury that he was responsible only for his reckless disregard for the safety of others. Moreover, whether Young operated the street sweeper recklessly that morning was a factual issue resolved by the jury which will remain undisturbed by this Court.

To the extent that plaintiffs claim that a separate charge of negligence should have been given to the jury with respect to Young's creation of a dangerous condition that day, namely, a cloud of dust, we are unpersuaded that Supreme Court erred in declining to so charge. The undisputed facts at trial reveal that Young's conduct in creating dust was inseparable from his operation of the street sweeper. To this end, we note that Vehicle and Traffic Law § 1103 (b) expressly applies to operators of equipment "during all phases of such work." Moreover, no proof submitted by plaintiffs supported a charge to the jury that the

---

**5.** Nor is there any indication in the entire legislative history of the statute that the Legislature *only* intended for the heightened standard of care to apply to work being performed in "limited[,] well-defined and controlled area[s]" (*Cottingham v State of New York, supra,* at 940).

resulting dust from the operation of the street sweeper was an independent act of recklessness, or even mere negligence.

In this regard, Young testified that the subject street sweeper contained a series of water nozzles to control dust, which he explained is a normal consequence of any street sweeping. He further testified that these nozzles were in working order on the day of the accident, that the tank had been filled with water twice that morning and that the water warning light, which indicates that the tank is low, never activated. This testimony went unrefuted. Defendant also presented evidence via an expert witness that no statutory or regulatory requirements mandate warning signs or flag persons be used by the operator of a street sweeper to warn motorists. This evidence also went unrefuted. Under these circumstances, even assuming that Young's creation of a dust cloud could be separated from his operation of the street sweeper generally, plaintiffs presented insufficient evidence to support a separate charge on this issue in any event.

Plaintiffs' remaining contentions have been reviewed and are either unpreserved for review or lacking in merit.

MERCURE, J. P., CREW III, SPAIN and MUGGLIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.