OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This personal injury claim arose from a two-vehicle accident that occurred January 12, 1997, on Route 78 in the Town of Java, Wyoming County. Claimant[1] and two passengers were *582 traveling in a westerly direction when their vehicle, a Ford pickup truck, collided with a New York State Department of Transportation (DOT) snowplow. The claim alleges that the snowplow, which was operated by State employee Todd Barvian, was traveling at an unsafe speed for existing conditions; that it did not stay on its proper side of the roadway; that the driver failed to keep a proper lookout for traffic in the westbound lane, and that he failed to control his vehicle-so as to avoid the accident.
The accident report and the testimony of both drivers establish that at the time of the accident the combination of snow and wind had created an almost total “whiteout” condition, which frequently obscured all pavement markings. In an affidavit submitted in support of the motion, Robert J. Niemiec, who owned the Ford truck and was a passenger in the front seat, stated that there was blowing snow but that the double yellow lines on Route 78 were visible on some portions of the road they had traveled prior to impact. He saw the snowplow coming toward them, but at that point the wind picked up so that — together with the plowing action — there was a “major whiteout” (see, Niemiec affidavit para 7). “When the whiteout started to clear,” Niemiec states, “the snowplow crossed onto our lane of traffic, hitting the driver side fender and door of my truck” (id., para 8). Niemiec reports that he filed a claim with the State for damage to his truck, which claim was settled for an amount equal to 50% of his damage (id., para 10).
Counsel for defendant has moved for summary judgment dismissing the claim on the ground that, in light of the allegations of wrongdoing contained in the claim and supporting papers, claimant would be unable to establish that the snowplow operator acted with “reckless disregard,” as required by Vehicle and Traffic Law § 1103 (b). The allegations, according to defendant, could only establish — at the most — that the driver of the snowplow was negligent.
Vehicle and Traffic Law § 1103 applies to the drivers of vehicles owned by Federal, State and local governments and their subdivisions. The statute refers both to “persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway” and to “hazard vehicles.” (Vehicle and Traffic Law § 1103 [b].) The first phrase of the first sentence of section 1103 (b) exempts certainly the first category — and possibly both categories if there is no distinction between them— from the “rules of the road” (i.e., the provisions of Vehicle and Traffic Law tit VII), with the exception of laws relating to driv *583 ing under the influence of alcohol or drugs.[2] The second phrase of that sentence, in language that has engendered considerable discussion and debate, exempts from the provisions of Vehicle and Traffic Law § 1202 (the law relating to stopping, standing and parking) “hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway,”[3] Finally, the second sentence of the subdivision provides that drivers of such vehicles are not protected from “the consequences of their reckless disregard for the safety of others.”
A related statute, section 1104, permits the drivers of “authorized emergency vehicles” to (1) stop, stand or park their vehicles as needed; (2) go through red lights or stop signs after slowing down; (3) exceed speed limits if it can be done with safety; and (4) disregard rules relating to turning and direction of movement. Unless it is a police vehicle, these exceptions apply only if the emergency vehicle is sounding a bell, horn or siren, and displaying at least one light visible from 500 feet away. The same standard of liability is applied: drivers of these vehicles are also not protected if their conduct amounts to “reckless disregard” of the safety of others (Vehicle and Traffic Law § 1104 [e]).
As indicated, there has recently been a great deal of discussion and disagreement about section 1103 and the categories of vehicles to which it refers. In Cottingham v State of New York (182 Misc 2d 928), Judge John L. Bell of this court posited a four-tier classification system for these vehicles. Under this view, the almost total exemption from all rules of the road conferred by the first phrase of section 1103 (b) — the broadest freedom, covering almost all of title VII and containing no requirement that the vehicle be operated with warning bells or sirens and lights — would apply only to vehicles “at work on the road,” which he considered to mean located within an actual “work zone,” as defined by Vehicle and Traffic Law § 160. Of those vehicles actually operating on the roadway, in the midst of others, police vehicles would have the greatest license: the ability to violate laws regarding the specifically designated actions (speed; obeying red lights; turning; and stopping, stand *584 ing and parking) without making use of additional warning lights or sirens (Vehicle and Traffic Law § 1104). Other emergency vehicles[4] are exempt from those same four laws but only with appropriate lights and warning bells employed (§ 1104). Finally, “hazard vehicles”[5] would, under the second phrase of section 1103 (b), be exempted only from the laws governing stopping, standing and parking. Under this interpretation of the statutes, when each category of vehicle was being operated properly within its area of exemption, the standard for imposing liability would be that of “reckless disregard,” but when it was not engaged in its specifically exempted activity, the driver would be judged by ordinary negligence standards.
It is difficult to argue with the logic and good sense of the Cottingham interpretation. It is also difficult to accept as logical the alternative (and, as it turns out, currently prevailing) interpretation that gives to all “hazard vehicles” — whether they are in a designated work area or performing their jobs on the open road — the much broader and less conditioned exemption of section 1103 (b). Why, for example, should rural letter carriers or tow truck drivers be permitted, in the course of their work, to speed, drive on the wrong side of the road, ignore pedestrian rights and vehicular rights-of-way, and disregard traffic signs and signals — all without sirens or lights being employed — while the driver of an ambulance or civil defense vehicle must employ both lights and bells or sirens in order to be exempt from any rules of the road and, even then, be exempted from only the laws relating to speed (if done safely), red lights and stop signs (after slowing down), turning and direction of movement, and stopping, standing and parking? As Judge Bell observed in Cottingham (supra, at 942), “If the drivers [of hazard vehicles] are entitled to receive the reckless disregard standard they will, in essence, receive more protection *585 than the drivers or operators of any other vehicles, indeed even the drivers of police vehicles.” This result defies logic and plain common sense. Unfortunately, it does not defy the rules of statutory interpretation or the legislative history of these particular statutes.
The most fundamental and overriding rule of statutory construction is that courts must give effect to the intent of the Legislature (Rust v Reyer, 91 NY2d 355; People v Ryan, 274 NY 149). In Riley v County of Broome (263 AD2d 267), the Third Department has explored in meticulous detail the background of and several amendments to Vehicle and Traffic Law §§ 1103 and 1104. While acknowledging that the two phrases of the first sentence of section 1103 (b) make that statute ambiguous and confusing, the appellate court found considerable, and persuasive, reason to conclude that the Legislature did not intend to distinguish between “vehicles at work on the highway” and “hazard vehicles.”
If there is no distinction, then the driver of a recognized hazard vehicle, such as a snowplow, is entitled to the full benefit of the section 1103 (b) exemption from virtually all of the rules of the road and to the higher, “reckless disregard” standard for determining liability, so long as the vehicle is actually engaged in the appropriate hazardous operation, such as plowing snow. Riley (supra) involved a mechanical street sweeper, which is not a specifically identified “hazard vehicle.” Later, however, the Fourth Department held that a snowplow that was engaged in plowing snow along a highway was “a ‘vehicle * * * [or] other equipment * * * actually engaged in work on a highway’ within the meaning of Vehicle and Traffic Law § 1103 (b)” and affirmed dismissal of an action because the snowplow operator did not act with “‘reckless disregard’” (Wilson v State of New York, 269 AD2d 854, 855).
In the instant claim, there are simply no allegations, either in the original claim or in the papers submitted in opposition to this motion, that the actions of State employee Todd Barvian amounted to reckless disregard for the safety of others. To meet this standard, claimant would have to prove that the driver’s actions involved “the conscious or intentional doing of an act of an unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow, and done with conscious indifference to the outcome” (Szczerbiak v Pilat, 90 NY2d 553, 557, citing Saarinen v Kerr, 84 NY2d 494). Claimant in this action has al *586 leged only negligence on the part of the driver, and, given the circumstances of the accident, in which the snowplow is alleged to have traveled into the opposite lane of traffic during a winter snowstorm described as a “whiteout,” claimant could, at the most, prove only negligence.
Accordingly, while I might otherwise be inclined to adopt the reasoning of Judge Bell in Cottingham (supra), I am compelled to apply the appellate ruling in Wilson v State of New York (supra). The motion is granted and the claim is dismissed.

. The claim of Amy Gawelko is derivative in nature and, unless otherwise indicated, the term claimant will refer solely to John L. Gawelko.

. Title VII contains statutes governing traffic signs and signals; driving on the right side of the roadway and passing; rights-of-way; pedestrian rights; stopping, turning and starting at signals; special stops; speed of travel; reckless driving; driving under the influence of alcohol and drugs; and stopping, standing and parking.

. This phrase further provides that the requirements of Vehicle and Traffic Law § 1202 “shall apply to such persons and vehicles when traveling to or from such hazardous operation.” (Vehicle and Traffic Law § 1103 [b].)

. In addition to police vehicles, “authorized emergency vehicles,” as defined by Vehicle and Traffic Law § 101, include ambulance, correction vehicle, fire vehicle, civil defense vehicle, emergency ambulance service vehicle, blood delivery vehicle, environmental emergency response vehicle, sanitation patrol vehicle, hazardous materials emergency vehicle, and ordinance disposal vehicle of the Armed Forces of the United States.

. “Hazard vehicles” are defined by Vehicle and Traffic Law § 117-a as follows: “Every vehicle owned and operated or leased by a utility, whether public or private, used in the construction, maintenance and repair of its facilities, every vehicle specially equipped or designed for the towing or pushing of disabled vehicles, every vehicle engaged in highway maintenance, or in ice and snow removal where such operation involves the use of a public highway and vehicles driven by rural letter carriers while in the performance of their official duties.”