In the Matter of EDGAR BUTLER, on Behalf of Himself and All Other Persons Similarly Situated, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants.

First Department, July 16, 1981

**APPEARANCES OF COUNSEL**

*Alexander J. Wulwick* of counsel *(Carolyn E. Demarest* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellants.

*Gary Maitland* of counsel *(Stephen F. Gordon* with him on the brief; *Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

At issue in this CPLR article 78 proceeding is an interpretation of chapter 884 of the Laws of 1973 (amdg the New York City Health and Hospitals Corporation Act, L 1969, ch 1016) and its applicability to petitioner.

On June 28, 1977, petitioner commenced employment as an addiction counselor at the methadone maintenance clinic of the Arthur C. Logan Hospital, a private, voluntary hospital. Although the hospital itself was not affiliated with the Health and Hospitals Corporation (Corporation), the methadone clinic was operated pursuant to a contract with the New York City Department of Health. Logan ceased operations, including the operation of the methadone clinic, on July 1, 1978, and was taken over by the Corporation pursuant to the Health and Hospitals Corporation Act. At the time the clinic had 19 employees, including petitioner. Operation of the clinic was continued under the aegis of Sydenham Hospital, a municipal institution, which hired all 19 of Logan's former clinic employees, including petitioner.

According to the personnel rules and regulations of the Corporation the position of addiction counselor was within the competitive class, but since no eligible list was available petitioner was provisionally appointed to the position. On August 9, 1978, petitioner acknowledged in writing, under protest, that his employment was provisional. He had resisted signing the form by contending that when a private hospital is taken over by the Corporation the employees automatically become permanent competitive employees of the city. The personnel director at Sydenham informed him that if he did not sign he would be discharged.

An open-competitive examination had been held for the position of addiction counselor on May 23, 1978, while petitioner was still at Logan, and before the take over by the Corporation. Petitioner had filed for the examination, but was informed by the New York City Department of Personnel that he was ineligible. Forty appointments were eventually made from the list, and one appointee elected to work at the Sydenham clinic. Six provisional addiction counselors were working at the clinic. By a winnowing process which retained the three provisionals who had taken

the examination and were on the list of eligibles and the other two provisionals who, like petitioner, were not on the list, but were senior to him in total length of service at Sydenham and Logan, petitioner was "bumped" and discharged, effective June 8, 1979.

Petitioner then commenced this CPLR article 78 proceeding against the Corporation, seeking a declaration that his dismissal violated the New York City Health and Hospitals Corporation Act, and reinstatement with back pay, and all other privileges, including seniority, otherwise accrued. Class action status was also sought.

Special Term granted so much of the petition as sought individual relief for petitioner, including reinstatement, back pay and seniority, but denied class action relief. The court found "strained" the Corporation's contention that the grant of permanent competitive status in section 9 (subd 2, par [b], cl [i]) of the New York City Health and Hospitals Corporation Act (L 1969, ch 1016, as amd by L 1973, ch 884, § 1) was limited to employees who perform "services provided * * * in the municipal hospitals of the city of New York", because section 9 (subd 2, par [b], cl [ii]) was intended to grant permanent competitive status to "those employees of the voluntary hospitals and medical schools in the city of New York performing services which are assumed by the corporation". Special Term reasoned that the clear intent of the two clauses "is that employees of voluntary hospitals be absorbed into the New York City Health and Hospitals Corporation, as they are required for the efficient administration of the facilities."

Section 9 (subd 2, par [b]) of the New York City Health and Hospitals Corporation Act reads:

"(i) It is hereby found that the continued, uninterrupted, adequate and efficient administration of health and medical services is necessary for the general welfare of the people of the city of New York. It is further found that with respect to certain services provided for the corporation by the voluntary hospitals and medical schools in the municipal hospitals of the city of New York, such administration properly requires that employees performing those services be employed by the corporation. For the continued per-

formance of those services assumed by the corporation, the continued employment of personnel possessing ability, skill, experience and knowledge is essential. A requirement of competitive examination for the appointment of any such employee to the corporation would seriously interrupt the continuous provision of health and medical services and is thus impractical. It is thereby declared to be in the public interest that because of their knowledge, training, experience and efficiency, those employees of the voluntary hospitals and medical schools be continued in the employment of the corporation without competitive examination, and shall be afforded permanent competitive status.

"(ii) Notwithstanding any provision to the contrary contained in any general, special or local law, those employees of the voluntary hospitals and medical schools in the city of New York performing services which are assumed by the corporation shall be transferred to and continued in employment by the corporation in similar or corresponding positions, which shall have been classified by the corporation in accordance with the provisions of subdivision one of this section. Such employees shall continue to hold their positions without further examination and shall have all the rights and privileges of the jurisdictional class to which such positions may be allocated; provided, however, that after such transfer of functions and activities to the corporation all new positions thereafter created and vacancies occurring in positions already established shall be filled in accordance with the provisions of subdivision one of this section."

This legislation had its origins in the transfer in 1972 and 1973 of approximately 3,000 employees of affiliated institutions who were working in municipal hospitals to the Corporation payroll. Prior to that time the Corporation had been subcontracting for the services of certain employees of voluntary affiliated hospitals to be performed in municipal hospitals. The Corporation eventually decided that these services would be, in the words of the city's legislative representative, "more properly performed by the Corporation and those employees of the affiliated institution who have experience and expertise needed by the Corporation." The legislation which followed was intended to confer

permanent, competitive status upon these affiliation employees, and to assure that the continuous performance of health care services would not be impeded by the requirement of competitive examinations.

Petitioner claims that the thrust of the 1973 amendment to section 9 of the New York City Health and Hospitals Corporation Act was to confer permanent, competitive status on two distinct classes of persons, those who perform services provided for the Corporation by the voluntary hospitals *in the municipal hospitals of the City of New York* and those employees of voluntary hospitals, who, like himself, provide services which, although performed outside the confines of a municipal hospital, are assumed by the Corporation. The Corporation argues that section 9 (subd 2, par [b], cl [ii]) does not establish a distinct class of protected employee but merely clarifies subdivision 2 (par [b], cl [i]). We believe that a fair reading of the statute leads to the conclusion that only those employees of affiliated voluntary hospitals and medical schools who perform services for the Corporation in the municipal hospitals are within its embrace. Because petitioner did not perform a function which the legislation covered he cannot be included in the class of protected employees. Accordingly, we reverse.

At the outset we note that in construing the provisions of a statute, the primary source for ascertaining legislative intent is the statute's language itself. *(Matter of Albano v Kirby*, 36 NY2d 526, 529-530, citing *Matter of Petterson v Daystrom Corp.*, 17 NY2d 32; *Department of Welfare of City of N. Y. v Siebel*, 6 NY2d 536, 545; *Matter of Bowne v Bowne Co.*, 221 NY 28, 31.) If petitioner's interpretation of paragraph (b) of subdivision 2 were accepted, the broader, all-inclusive language of clause (ii) would include, as well, the narrower, *more restrictive language of clause* (i), thereby rendering clause (i) superfluous. We do not believe that the Legislature would have included language in subdivision 2 (par [b], cl [i]) to the effect that the transferred employees must have performed services for the Corporation in a municipal hospital in order to become permanent employees, and then permit the same permanent status *to be accorded under subdivision 2 (par [b], cl [ii])*

to employees who performed "services which are assumed by the corporation". The language in subdivision 2 (par [b], cl [ii]) would embrace all former employees of the private hospital irrespective of whether they performed services in a municipal hospital.

While the language used to describe the class of employees upon whom competitive status was being conferred differed, the two clauses are reconcilable. The language in section 9 (subd 2, par [b], cl [ii]), "performing services which are assumed by the corporation" necessarily refers back to the language in subdivision 2 (par [b], cl [i]) *"services* provided for the corporation by the voluntary hospitals and medical schools in the municipal hospitals of the city of New York". (Emphasis added.) So also, the phrase in subdivision 2 (par [b], cl [i]), "those services assumed by the corporation", clearly refers to the services performed for the Corporation by employees of voluntary hospitals in municipal hospitals.

To have any meaning the two clauses of paragraph (b) of subdivision 2 must be read together. Viewing the two as an integrated whole we have no difficulty in finding clause (ii) of paragraph (b) to be an expansion and clarification of clause (i) of paragraph (b). Under subdivision 2 (par [b], cl [i]) employees are "continued in the employment of the corporation without competitive examination, and [are] * * * afforded permanent competitive status." Under clause (ii) of paragraph (b) they "shall continue to hold their positions without further examination and shall have all the rights and privileges of the jurisdictional class to which such positions may be allocated". Nowhere in clause (ii) is permanent competitive status mentioned, and its existence can only be gleaned by reference to clause (i). Moreover, subdivision 2 (par [b], cl [ii]) provides that "all new positions thereafter created and vacancies occurring in positions already established shall be filled in accordance with the provisions of subdivision one of this section", while subdivision 2 (par [b], cl [i]) makes no reference at all to subdivision 1 (which provides for the promulgation of rules and regulations consistent with civil service law relating to position, classification, appointment and promotion).

If petitioner's construction were to prevail the positions of section 9 (subd 2, par [b], cl [i]) of the New York City Health and Hospitals Corporation Act employees could not be filled under the Civil Service Law, because the Legislature expressly omitted procedures for the filling of vacancies or new positions when it drafted the statute. *Expressio unius est exclusio alterius*—the specific mention of one thing implies the exclusion of other things (McKinney's Cons Laws of NY, Book 1, Statutes, § 240; *Strauch v Town of Oyster Bay*, 263 App Div 833). Since it is unlikely that the Legislature intended to permit the Corporation to take over the services provided by the hospitals, and then see the positions emptied by attrition, we must assume that the continuance of the services was intended. Indeed, the legislation itself (§ 9, subd 2, par [b], cl [i]) speaks of the desirability of having "continued, uninterrupted, adequate and efficient administration of health and medical services". The State Constitution (art v, § 6) provides that the appointments be made by merit and fitness, and, as far as practicable, by competitive examination. To preclude, by omission, future positions in the subdivision 2 (par [b], cl [i]) class from being filled by competitive examination would surely be unconstitutional, particularly since it is required of employees in the subdivision 2 (par [b], cl [ii]) class.

Thus, it is fairly apparent that the purpose of clause (ii) of paragraph (b) is to detail some of the benefits afforded by clause (i) of paragraph (b), namely, that the affected employees shall be continued in their employment in positions similar or corresponding to their prior positions; that they shall hold their positions without further examinations; and that they shall possess all the rights and privileges of the jurisdictional class to which their positions may be assigned.

The argument advanced by petitioner and adopted by Special Term is contrary to the fundamental principle of statutory construction that particular provisions of a statute "should not be torn from their places and, so isolated, be given a special meaning at variance with the general purpose and spirit of the enactment." (McKinney's

Cons Laws of NY, Book 1, Statutes, § 97, p 214.) Even in the guise of construction, the courts may neither excise nor expand a portion of a statute. Whether the Legislature should have conferred permanent, competitive status on all of the employees of a private, voluntary hospital taken over by the Corporation is not for the courts to say. (See *Matter of McNerney v City of Geneva*, 290 NY 505, 511.) Had the Legislature been desirous of doing so, it could have inserted the necessary language in relatively unambiguous terms. "The court is obliged to construe statutory language literally where it expresses the evident intent of the Legislature, and the court cannot disregard the plain words of a statute even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act." (McKinney's Cons Laws of NY, Book 1, Statutes, § 94, pp 190-191; accord *Matter of Agioritis*, 52 AD2d 128, 135, affd 40 NY2d 646.) "The power of extending the meaning of a statute beyond its words, and deciding by the equity, and not the language, approaches so near the power of legislation, that a wise judiciary will exercise it with reluctance and only in extraordinary cases." *(Matter of McNerney v City of Geneva*, 290 NY 505, 511, *supra*, citing *Inhabitants of Monson v Inhabitants of Chester*, 22 Pick [39 Mass] 385, 387.)

Finally, we note that the statute should not be broadened any further than the ordinary meaning of its words permit, for to do so would be inconsistent with the mandate of section 6 of article v of the New York State Constitution that appointments be made according to merit and fitness and, as far as practicable, by competitive examination. Reinstatement of petitioner would result in either the bumping of an employee hired or retained on the basis of a competitive examination or the unwanted creation of a new line to accommodate petitioner.

Accordingly, the judgment, Supreme Court, New York County (TYLER, J.), entered March 31, 1980, which, *inter alia*, granted the petition and ordered respondent to reinstate petitioner to his former position with all rights and privileges attendant thereto should be reversed, on the law, without costs or disbursements, and the petition dismissed.

MARKEWICH, BLOOM and FEIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on March 31, 1980, unanimously reversed, on the law, without costs and without disbursements, and the petition dismissed.