OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 These appeals call upon us to do what increasingly is asked of courts in this age of statutes: interpret the words of a legislative enactment which the contesting parties construe differently. In particular, we are asked whether Vehicle and Traffic Law § 1103 (b) exempts statutorily defined “hazard vehicles” engaged in highway work from the “rules of the road,” and whether it limits the liability of their owners and operators to reckless disregard for the safety of others. We conclude that defendants correctly read the statute, and we hold — as did the courts before us — that the vehicles here were exempt from the rules of the road and their liability limited to reckless conduct.
 

 Riley v County of Broome
 

 Defendant Garwood A. Young, an employee of the Broome County Highway Division, was operating a street sweeper on West Colesville Road in the Town of Kirkwood. Young was driving two or three miles per hour, with the sweeper straddling the shoulder and the road. Plaintiff Betty Riley was also driving on West Colesville Road, in the same direction as the street sweeper. As Riley reached the top of a hill, she saw a “huge patch of fog” — actually a cloud of dirt and dust created by the sweeper — and collided with the sweeper.
 

 Riley and her husband brought this action against Young and the County, alleging that the sweeper caused the accident.
 
 *460
 
 At trial, the court held — over Riley’s objection — that, under Vehicle and Traffic Law § 1103 (b), the applicable standard of care was whether defendants conducted themselves “in such a way so as not to recklessly disregard the safety of others.” The court then charged the jury on that standard. The jury returned a verdict in favor of defendants, finding no recklessness in the operation of the sweeper. In a comprehensive opinion by Justice Anthony J. Carpinello, the Appellate Division affirmed, holding that under Vehicle and Traffic Law § 1103 (b), all vehicles engaged in “highway maintenance” are exempt from the rules of the road and subject only to a recklessness standard (263 AD2d 267, 273).
 

 Wilson v State of New York
 

 Claimant John Wilson was driving west from Canajoharie to Utica on Route 5, traveling at 30 to 35 miles per hour. Moderate to heavy snow was falling, rendering visibility poor. Two snowplows owned by the State were operating near the intersection of Route 5 and Route 167, one behind the other in the eastbound passing lane on Route 5. As Wilson approached the intersection, the first snowplow stopped to make a wide turn, and the second snowplow — driven by William Hunt— made a left turn inside the first plow in an attempt to enter Route 167 North. Although Hunt looked, he did not see Wilson’s car approaching, and his snowplow collided with Wilson’s car.
 

 Wilson then brought the present action against the State of New York. The case proceeded to trial before the Court of Claims. At the close of the evidence, the State moved to dismiss, arguing that Wilson had failed to establish that the accident was the result of recklessness. The court granted the motion, holding that a recklessness standard applied because the snowplow was involved in work on a highway within the meaning of Vehicle and Traffic Law § 1103 (b), and that the evidence was insufficient to meet that standard. The Appellate Division affirmed, holding that since the snowplow qualified as a vehicle “actually engaged in work on a highway” under section 1103 (b), the recklessness standard applied, and the evidence failed to establish that Hunt had acted recklessly (269 AD2d 854).
 

 The “Hazard Vehicle” Exemption
 

 On appeal to this Court, Riley and Wilson (claimants) contend that Vehicle and Traffic Law § 1103 (b) does not
 
 *461
 
 exempt “hazard vehicles” — like snowplows and street sweepers — from the rules of the road.
 
 [1]
 
 Rather, they assert that section 1103 (b) exempts such vehicles only from the stopping, standing and parking regulations of Vehicle and Traffic Law § 1202 (a). We agree with the trial courts and the Appellate Division that section 1103 (b) exempts all vehicles “actually engaged in work on a highway” — including the vehicles here— from the rules of the road.
 

 Some degree of risk, of course, is inherent in travel on public highways. Certain classes of vehicles — like snowplows and street sweepers — are intended to minimize the risk by keeping the roadways clean and safe for everyone. While serving an important public function, however, those vehicles may themselves cause risks to ordinary motorists with whom they share the road. Over the years, courts and legislatures have struggled to define the rules under which these vehicles may operate and the standard of care they owe to others.
 

 At common law, all vehicles, including emergency vehicles, were held to an ordinary negligence standard
 
 (see, e.g., Farley v Mayor of City of N. Y.,
 
 152 NY 222, 227-228 [1897];
 
 Garrett v City of Schenectady,
 
 268 NY 219, 223-224 [1935];
 
 Ottmann v Village of Rockville Centre,
 
 275 NY 270, 273 [1937]).
 
 [2]
 
 But the common law also recognized that the level of care owed by emergency and road work vehicles must be tempered by the nature of their work. Fire trucks, for instance, were permitted to drive at the “greatest practicable speed,” since the “safety of property and the protection of life may * * * depend upon celerity of movement”
 
 (Farley v Mayor of City of N. Y., supra,
 
 at 227). In addition, many emergency vehicles were, by statute, given the right of way
 
 (see, id.).
 
 Nevertheless, the common law required that such vehicles exercise their right of way
 
 *462
 
 “with care and. caution * * * measured by the purpose and necessity of the right”
 
 (Hashey v Board of Fire Commrs. of Roosevelt Fire Dist,
 
 192 NYS2d 767, 769-770 [Sup Ct, Nassau County]).
 

 In 1957, the Legislature enacted what is now title VII of the Vehicle and Traffic Law (§ 1100
 
 et seq.),
 
 creating a uniform set of traffic regulations, or the “rules of the road”
 
 (see,
 
 L 1957, ch 698). That legislation was intended to update and replace the former traffic regulations, and bring them into conformance with the Uniform Vehicle Code adopted in other states
 
 (see,
 
 Mem in Support, Bill Jacket, L 1957, ch 698, at 35-37).
 

 The Vehicle and Traffic Law states that the rules of the road apply to all vehicles unless otherwise provided by law
 
 (see,
 
 Vehicle and Traffic Law §§ 1101, 1103 [a]). Except for the provisions regarding driving under the influence of drugs or alcohol, however, the rules of the road explicitly do
 
 not
 
 apply to “persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway” (Vehicle and Traffic Law § 1103 [b]).
 
 [3]
 
 Section 1103 (b) adds that Vehicle and Traffic Law § 1202 (a), which regulates stopping, standing and parking, does not apply to “hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles .when traveling to or from such hazardous operation.” Similarly, Vehicle and Traffic Law § 1104 exempts “emergency vehicles,” such as ambulances, police vehicles and fire vehicles
 
 (see,
 
 Vehicle and Traffic Law § 101), engaged in emergency operations from the rules of the road, subject to specified conditions.
 

 The language of these statutes seems clear: all vehicles “actually engaged in work on a highway” — just as all emergency vehicles engaged in emergency operations — are exempt from
 
 *463
 
 the rules of the road. In the cases at hand, the street sweeper and the snowplow were engaged in “work on a highway.” The street sweeper was cleaning the street; the snowplow was clearing the road during a snowstorm. Thus, the Appellate Division correctly held that section 1103 (b) exempts both vehicles from the rules of the road.
 

 We reject claimants’ contention that designated “hazard vehicles” are exempt
 
 only
 
 from the stopping, standing and parking regulations of section 1202 (a), even when they are engaged in work on a highway. Section 1103 (b) says no such thing. Rather, by its plain language, section 1103 (b) excuses all vehicles “actually engaged in work on a highway” from the rules of the road, regardless of their classification. To be sure, the statute also gives protection to designated “hazard vehicles” engaged in “hazardous operation” (as defined by sections 117-a and 117-b), excusing them from the stopping, standing and parking rules of section 1202 (a). But the statute nowhere states that “hazard vehicles” are a distinct class from “work vehicles,” nor does it deny “hazard vehicles” the special protection given to all vehicles actually engaged in road work.
 
 [4]
 

 The legislative history of section 1103 (b) confirms this plain language reading.
 

 We note at the outset that it is appropriate to examine the legislative history even though the language of section 1103 (b) is clear. The primary consideration of courts in interpreting a statute is to “ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a], at 177). Of course, the words of the statute are the best evidence of the Legislature’s intent. As a general rule, unambiguous language of a statute is alone determinative
 
 (see, Matter of Washington Post Co. v New York State Ins. Dept.,
 
 61 NY2d 557, 565). Nevertheless, the legislative history of an enactment may also be relevant and “is not to be ignored, even if words be clear” (McKinney’s Cons Laws of NY, Book 1, Statutes § 124, at 252). “ When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no “rule of law” which forbids its use, however clear the words may appear on “superficial exam
 
 *464
 
 ination” ’ ”
 
 (New York State Bankers Assn. v Albright,
 
 38 NY2d 430, 437). Pertinent also are “the history of the times, the circumstances surrounding the statute’s passage, and * * * attempted amendments” (McKinney’s Cons Laws of NY, Book 1, Statutes § 124, at 253). Varying concerns may bear on the weight to be given legislative history
 
 (see generally,
 
 Abner J. Mikva and Eric Lane, An Introduction to Statutory Interpretation and the Legislative Process, at 27-41 [1997]), but they do not justify abandoning this Court’s long tradition of using all available interpretive tools to ascertain the meaning of a statute.
 

 Here, the history of section 1103 (b) explicates the legislative intention to create a broad exemption from the rules of the road for all vehicles engaged in highway construction, maintenance or repair, regardless of their classification. In 1954, the Committee that proposed the original version of the statute stated that the law was intended to exempt from the rules of the road all teams and vehicles that “build highways, repair or maintain them, paint the pavement markings, remove the snow, sand the pavement and do similar work”
 
 (see,
 
 1954 NY Legis Doc No. 36, at 35). Thus, the exemption turns on the nature of the work being performed (construction, repair, maintenance or similar work) — not on the nature of the vehicle performing the work.
 

 Further, the legislative history shows that the reference to “hazard vehicles” in section 1103 (b) is wholly unrelated to the provision excusing vehicles engaged in road work from the rules of the road. Notably, the original version of section 1103 (b), enacted in 1957, exempted vehicles “engaged in work on a highway” from the rules of the road, and did
 
 not
 
 contain any separate provisions concerning hazard vehicles
 
 (see,
 
 L 1957, ch 698, § 4).
 
 [5]
 
 In 1970, the Legislature amended the Vehicle and Traffic Law to create the “hazard class” of vehicles, enacting section 117-a defining hazard vehicles, and amending section 1103 (b) to exempt hazard vehicles from the standing, stopping
 
 *465
 
 and parking regulations
 
 (see,
 
 L 1970, ch 197). The Memorandum in Support of that amendment explained that it was intended to clear up confusion as to the meaning of different “flashing colored lights,” and thus four distinct classes of vehicles were created (emergency vehicles, hazard vehicles, privately owned vehicles of volunteer firemen and privately owned vehicles of volunteer ambulance drivers), each of which is identified by a different colored flashing light
 
 (see,
 
 Bill Jacket, L 1970, ch 197, at 4). The amendment was not intended to curtail the exemption for any vehicles — including “hazard vehicles” — engaged in work on a highway
 
 (see,
 
 Dugan Letter, Bill Jacket, L 1970, ch 197, at 16 [noting the exemption of hazard vehicles and emergency vehicles from the rules of the road]).
 

 Thus, we conclude that section 1103 (b) exempts from the rules of the road all vehicles actually engaged in work on a highway, including the “hazard vehicles” in the cases before us.
 

 The Standard of Care
 

 We next turn to the standard of care owed to other drivers by vehicles “actually engaged in work on a highway.” Originally, section 1103 (b) provided such vehicles with an unqualified exemption from the rules of the road
 
 (see,
 
 L 1957, ch 698, §4). In a 1974 amendment, the Legislature added the following sentence to that section:
 

 “The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with
 
 due regard for the safety of all persons
 
 nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their
 
 reckless disregard for the safety of others”
 
 (L 1974, ch 223, § 1) (emphasis added).
 

 The legislative history explains that this amendment was designed to soften the outright exemption of vehicles engaged in road work from the rules of the road, allowing them to drive at any speed or in any manner “which suits their fancy, without any prohibition from the Vehicle and Traffic Law”
 
 (see,
 
 Mem of Senator Frank Padavan, Bill Jacket, L 1974, ch 223, at 4). For
 
 *466
 
 example, under the original version of the statute, “a snow plow could be operated well above the speed limit and through red lights * * * without regard for the safety of other persons” (Mem of Dept of Motor Vehicles, Bill Jacket, L 1974, ch 223, at 7). The Legislature therefore amended section 1103 (b) to impose
 
 “a
 
 minimum standard of care” on operators of such vehicles (Padavan Mem,
 
 op. cit,
 
 at 4).
 

 In
 
 Saarinen v Kerr
 
 (84 NY2d 494), we held that Vehicle and Traffic Law § 1104 (e) — which contains identical language requiring emergency vehicles to act with “due regard for the safety of all persons” and holding drivers responsible for “the consequences of [their] reckless disregard for the safety of others” — imposes a standard of recklessness. Specifically, this Court held that, under section 1104 (e), a plaintiff seeking to recover for injuries caused by an emergency vehicle must show that “ ‘the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow’ and has done so with conscious indifference to the outcome”
 
 (id.,
 
 at 501 [quoting Prosser and Keeton, Torts § 34, at 213 (5th ed)]).
 

 Section 1103 (b) imposes the same recklessness standard on vehicles actually engaged in work on a highway. The language here is the same language that we held in
 
 Saarinen
 
 to impose a recklessness standard. To be sure, as claimants point out, the statute uses the phrase “due regard” as well as “reckless disregard” to describe the standard. But as we stated in
 
 Saarinen,
 
 “the Legislature’s specific reference to * * *
 
 reckless disregard
 
 * * * would be unnecessary and, in fact, inexplicable if the conventional criterion for negligence — reasonable care under the circumstances — were the intended standard”
 
 (Saarinen v Kerr, supra,
 
 at 501) (emphasis in original). Thus, “the only way to apply the statute is to read its general admonition to exercise ‘due care’ in light of its more specific reference to ‘recklessness’ ”
 
 (id.,
 
 at 501-502;
 
 see also, Bliss v State of New York,
 
 95 NY2d 911 [decided today]).
 

 We decline claimants’ invitation to read the “due regard” and “reckless disregard” language in section 1103 (b) differently from our reading of those very words in section 1104 (e). As a general principle of statutory construction, “whenever a word is used in a statute in one sense and with one meaning, and subsequently the same word is used in a statute on the same subject matter, it is understood as having been used in the same sense” (McKinney’s Cons Laws of NY, Book 1, Statutes § 236, at 402).
 

 
 *467
 
 Nor is there anything in the context or history of the statutes indicating that different meanings were intended. In fact, the history of section 1103 (b) confirms that the Legislature intended to subject vehicles engaged in road work to the same standard of care as emergency vehicles. The Attorney General’s memorandum in support of the 1974 amendment states that the bill “extends the standard of care presently applicable to drivers of authorized emergency vehicles under § 1104 * * * to persons engaged in maintenance and hazardous operations” (Lefkowitz Mem, Bill Jacket, L 1974, ch 223, at 2). In addition, Senator Padavan’s supporting memorandum states that the amendment imposes a standard “similar to that imposed on operators of authorized emergency vehicles” (Padavan Mem,
 
 op. cit.,
 
 Bill Jacket, at 4). Many other memoranda in the bill jacket confirm this understanding
 
 (see,
 
 Department of Transportation Mem, Bill Jacket, L 1974, ch 223, at 5; Department of Motor Vehicles Mem, Bill Jacket, L 1974, ch 223, at 6; New York State Police Mem, Bill Jacket, L 1974, ch 223, at 8; Association of Towns Mem, Bill Jacket, L 1974, ch 223, at 10). Undeniably then, the 1974 amendment was intended to subject vehicles engaged in road work to the same recklessness standard applicable to emergency vehicles under section 1104 (e)
 
 (see, McDonald v State of New York,
 
 176 Misc 2d 130, 139 [Ct Cl]).
 

 Claimants urge that, as a matter of logic and fairness, vehicles engaged in road work should not enjoy the same level of protection as emergency vehicles, like police cars, fire trucks and ambulances. As we stated in
 
 Saarinen,
 
 the protection given to emergency vehicles under section 1104 (e) “represents a recognition that the duties of police officers and other emergency personnel often bring them into conflict with the rules and laws that are intended to regulate citizens’ daily conduct,” and that emergency personnel require a “qualified privilege to disregard those laws where necessary to carry out their important responsibilities”
 
 (Saarinen v Kerr, supra,
 
 at 502). The Court recognized, however, that giving emergency personnel this qualified privilege “will inevitably increase the risk of harm to innocent motorists and pedestrians,” and “will necessarily escalate the over-all risk to the public at large” — an increased risk justified by the necessity of accomplishing an “immediate, specific law enforcement or public safety goal”
 
 (id.,
 
 at 502).
 

 As claimants point out, it is unclear that the increased risk to the public is similarly justified for all vehicles engaged in road work. Indeed, criticizing protections given to non-
 
 *468
 
 emergency vehicles under pre-1957 law, the Joint Legislative Committee that was convened to revise the Vehicle and Traffic Law also observed that the “reason for extending emergency privileges to non-emergency vehicles * * * is not apparent. * * * The danger to highway users and true emergency vehicles is greatly increased by the special status which is unnecessarily given to non-emergency vehicles” (1954 NY Legis Doc No. 36, at 35). The trial court in
 
 Gawelko v State of New York
 
 (184 Misc 2d 581 [Ct Cl]) echoed that concern, questioning the present law:
 

 “Why, for example, should rural letter carriers or tow truck drivers be permitted, in the course of their work, to speed, drive on the wrong side of the road, ignore pedestrian rights and vehicular rights-of-way, and disregard traffic signs and signals — all without sirens or lights being employed — while the driver of an ambulance or civil defense vehicle must employ both lights and bells or sirens in order to be exempt from any rules of the road?”
 
 (Id.,
 
 at 584;
 
 see also, Cottingham v State of New York,
 
 182 Misc 2d 928, 942 [Ct Cl].)
 

 Apt as those concerns may be, the Legislature has spoken clearly, giving vehicles engaged in road work the benefit of the same lesser standard of care as emergency vehicles. Any change in that standard, therefore, must come from the Legislature, not the courts.
 

 Work Area
 

 Finally, there is no merit to claimants’ argument that the protections of section 1103 (b) apply solely to vehicles operating in a designated “work area” as defined in Vehicle and Traffic Law § 160. Section 1103 (b) states that a vehicle “actually engaged in work on a highway” is exempt from the rules of the road. The statute does not require that a vehicle be located in a designated “work area” in order to receive the protection. Significantly, section 160 was not enacted until 1984 — long after section 1103 (b) was adopted. Thus, there is no credible argument that the Legislature only had designated “work areas” in mind when it adopted section 1103 (b).
 

 Claimants’ remaining arguments are without merit.
 

 Accordingly, in each case the order of the Appellate Division should be affirmed, with costs.
 

 
 *469
 
 Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In each case: Order affirmed, with costs.
 

 [1]
 

 . Vehicle and Traffic Law § 117-a defines “hazard vehicle” as follows: “Every vehicle owned and operated or leased by a utility, whether public or private, used in the construction, maintenance and repair of its facilities, every vehicle specially equipped or designed for the towing or pushing of disabled vehicles, every vehicle engaged in highway maintenance, or in ice and snow removal where such operation involves the use of a public highway and vehicles driven by rural letter carriers while in the performance of their official duties.” “Hazardous operation” is defined as the “operation, or parking, of a vehicle on or immediately adjacent to a public highway while such vehicle is actually engaged in an operation which would restrict, impede or interfere with the normal flow of traffic” (Vehicle and Traffic Law § 117-b).
 

 [2]
 

 . This accorded with the common-law rule in other jurisdictions (see, Annotation,
 
 Liability for Injury or Damage Caused by Snowplowing or Snow Removal Operations and Equipment,
 
 83 ALR4th 5).
 

 [3]
 

 . Section 1103 (b) states in its entirety: “Unless specifically made applicable, the provisions of this title, except the provisions of sections eleven hundred ninety-two through eleven hundred ninety-six of this chapter, shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway nor shall the provisions of subsection (a) of section twelve hundred two apply to hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles when traveling to or from such hazardous operation. The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others.”
 

 [4]
 

 . To the extent that
 
 Somersall v New York Tel. Co.
 
 (74 AD2d 302, 307-309,
 
 revd on other grounds
 
 52 NY2d 157) holds otherwise, that decision is not to be followed.
 

 [5]
 

 . The original version of section 1103 (b) stated in its entirety: “Unless specifically made applicable, the provisions of this title shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway nor shall the provisions of subsection (a) of section twelve hundred two apply to vehicles operated by public service corporations while actually engaged in work on the installation or maintenance of public service facilities on or adjacent to a highway but shall apply to such persons and vehicles when traveling to or from such work.”