Matter of Makhani v Kiesel (2022 NY Slip Op 06556)

Matter of Makhani v Kiesel

2022 NY Slip Op 06556

Decided on November 17, 2022

Appellate Division, First Department

HIGGITT, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 17, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
David Friedman Anil C. Singh Martin Shulman John R. Higgitt

Ind No. 1420/21 Appeal No. 16444 Case No. 2022-03338 

[*1]In the Matter of Joseph Makhani, Petitioner,
v
The Honorable Diane Kiesel, etc. et al., Respondents.

In this original proceeding pursuant to article 78 of the Civil Practice Law and Rules, petitioner seeks a writ of prohibition to enjoin and prohibit respondents from directing that the indictment against petitioner proceed to trial.

Friedman Kaplan Seiler & Adelman LLP, New York (Robert S. Smith and Philip J. Biegler, of counsel), and NechelesLaw LLP, New York (Gedalia M. Stern and Susan R. Necheles of counsel), for petitioner.
Letitia James, Attorney General, New York, (Melissa Ysaguirre and Elizabeth Figueira0 of counsel), for Letitia James, respondent.

HIGGITT, J. 

This CPLR article 78 proceeding seeking a writ of prohibition raises an issue of apparent first impression: whether the Attorney General may criminally prosecute an individual based on an Executive Law § 63(3) referral from the Chief Administrative Judge of the Unified Court System. Executive Law § 63(3) authorizes the Attorney General of the State of New York, "[u]pon request of the governor, comptroller, secretary of state, commissioner of transportation, superintendent of financial services, commissioner of taxation and finance, commissioner of motor vehicles, or the state inspector general, or the head of any other department, authority, division or agency of the state," to investigate and prosecute criminality relating to any matter connected with the referring entity. Petitioner, the subject of the criminal prosecution initiated and maintained by the AG based on the purported Executive Law § 63(3) referral by an officer within the Unified Court System, commenced this special proceeding for a writ of prohibition challenging the validity of the referral and the legality of the AG's authority to prosecute him. We hold that an Executive Law § 63(3) referral can come only from an agency within the executive branch. Therefore, a referral from an officer within the Unified Court System  that is, the judicial branch of government  is not permitted by the statute, and, for the reasons discussed below, we grant prohibition relief to petitioner.
I.
The issues presented in this proceeding emanate from a January 4, 2016 letter a special counsel in the AG's Criminal Division sent to the Unified Court System's Inspector General's Office. The letter regarded "[f]orgery and [o]ther [c]rimes committed on New York State Courts." The special counsel advised that he was investigating allegations of forgery, attempted larceny, and deed theft, and that one of the targets of the investigation was petitioner. The special counsel wrote that petitioner had forged signatures on deeds that were recorded in the Office of the City Register, and that petitioner had used the forged deeds as exhibits in real property actions in New York State courts. Petitioner's conduct was directed primarily at the elderly and other vulnerable members of society. The special counsel also advised that petitioner had "committed additional frauds upon the courts and the citizens of New York State": petitioner [*2]filed motions in New York State courts in an effort to fraudulently obtain unclaimed or abandoned funds to which he had no right. The penultimate paragraph of the letter stated that the AG "respectfully requests a referral pursuant to New York Executive Law Section 63(3) to investigate and, if appropriate, prosecute the alleged commission by [petitioner] for any indictable offense arising out of a violation of the Penal Law or any other applicable state law or regulation promulgated thereunder."
On February 1, 2016, Chief Administrative Judge Lawrence K. Marks responded to the AG's January 4, 2016 letter. Judge Marks requested that the AG accept his February 1 letter as a request under Executive Law § 63(3) that the AG investigate petitioner's alleged offenses relating to forged deeds and fraudulent court filings. A second letter from Judge Marks to the AG followed on March 18, 2016. The March letter was substantially similar to the February letter and included the additional request that the AG prosecute petitioner for any relevant crimes or offenses.
The AG subsequently presented the matter to a New York County grand jury, that, in June 2021, returned a seven-count indictment against petitioner. The indictment charged petitioner with criminal possession of stolen property in the first degree (Penal Law § 165.54), criminal possession of stolen property in the second degree (Penal Law § 165.52), residential mortgage fraud in the first degree (Penal Law § 187.25), residential mortgage fraud in the second degree (Penal Law § 187.20), scheme to defraud in the first degree (Penal Law § 190.65[1][b]), and two counts of falsifying business records in the first degree (Penal Law § 175.10). The charges related to petitioner's efforts to fraudulently obtain title to two Manhattan properties.
In the ensuing criminal proceeding  People v Makhani (NY County indictment No. 1420/21)  petitioner made an omnibus motion seeking, among other things, dismissal of the indictment on various grounds; however, petitioner did not raise any issue in his omnibus motion regarding the AG's authority to prosecute the proceeding. Supreme Court (Kiesel, J.) denied most of the relief requested in the omnibus motion, and the prosecution continued.
In March 2022, petitioner again sought dismissal of the indictment, this time arguing that the purported referral from Chief Administrative Judge Marks did not confer on the AG the requisite jurisdiction to serve as a prosecuting authority. According to petitioner, Executive Law § 63(3), the authority on which the AG relied to serve as the prosecutor, did not permit a referral from the Unified Court System. Further, petitioner asserted that even if a referral could come from the Unified Court System, the referral had to come from the Chief Judge of the Court of Appeals (then-Chief Judge DiFiore), not Chief Administrative Judge Marks.
The AG opposed the second motion to dismiss, arguing, among other things, that the [*3]Unified Court System can make a valid referral to the AG under Executive Law § 63(3), and that Chief Administrative Judge Marks was empowered to make the referral.
By a June 10, 2022 decision and order, Supreme Court (Kiesel, J.) denied petitioner's second motion to dismiss.
II.
After the denial of his second motion to dismiss, petitioner brought the present special proceeding in this Court seeking a writ of prohibition against the AG and Justice Kiesel (see CPLR 506[b], 7804[b]). Petitioner requests that we vacate Justice Kiesel's June 10, 2022 decision and order, prohibit her from continuing to exercise jurisdiction over his criminal proceeding, prohibit the AG from continuing to prosecute him, and dismiss the indictment. The crux of petitioner's special proceeding is that the AG lacks the power to prosecute him, and is thus acting without jurisdiction (as is Justice Kiesel by permitting his continued prosecution). Prohibition is warranted, asserts petitioner, because the prosecution of the criminal proceeding by one without the power to do so is a jurisdictional deficiency that implicates the legality of the entire proceeding.
Petitioner stresses that, absent a grant of prosecutorial power by statute, the AG lacks criminal jurisdiction over a matter, and argues that Executive Law § 63(3) does not confer upon the AG jurisdiction to prosecute him. As he did in his second motion to dismiss before Supreme Court, petitioner maintains that the Unified Court System is not authorized to make a referral; rather, only departments, authorities, divisions, and agencies within the executive branch are permitted to make such referrals. Petitioner repeats his contention that, even assuming that an Executive Law § 63(3) referral could come from the Unified Court System, Chief Administrative Judge Marks could not issue a valid referral because he is not the "head" of the Unified Court System and was not delegated the power to make the referral by the Chief Judge of the Court of Appeals.
In opposition to the petition, the AG contends that petitioner failed to show a clear legal right to a writ of prohibition, and, in any event, that petitioner has an adequate remedy at law: an appeal from any resulting judgment of conviction. With respect to the former argument, the AG maintains that the Unified Court System is a "department, authority, division or agency of the state" (Executive Law § 63[3]) and, therefore, a valid referral can come from it. The AG observes that nothing in Executive Law § 63(3) suggests that a referral can come only from an agency within the executive branch. The AG also maintains that, while the Chief Judge of the Court of Appeals is the chief judicial officer of the State (see NY Const, art VI, § 28[a]; Judiciary Law § 210), Chief Administrative Judge Marks was delegated the requisite authority to make referrals by various constitutional, statutory, and regulatory provisions (see NY Const, art VI, § 28[b]; Judiciary Law § 212[[*4]1]; 22 NYCRR part 80).
Regarding petitioner's remedies, the AG notes that petitioner could raise his jurisdictional challenge on a direct appeal from any judgment of conviction, and that no compelling reason exists to permit petitioner to avail himself of the extraordinary remedy of prohibition.
III.
A.
We cannot examine the merits of petitioner's claim without first determining whether the issue presented by the petition is the type for which the extraordinary remedy of prohibition may lie (see Matter of B.T. Prods. v Barr, 44 NY2d 226, 231 [1978]; see also Matter of Dondi v Jones, 40 NY2d 8, 12 [1976]).
The remedy of prohibition, a common-law device now codified in CPLR 7803(2), prevents or controls extra-jurisdictional judicial or quasi-judicial action. "[P]rohibition lies only where there is a clear legal right and only when the body or officer acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceed[ed] its authorized powers in a proceeding over which it has jurisdiction" (Dondi v Jones, 40 NY2d at 13; see Matter of Holtzman v Goldman, 71 NY2d 564, 569 [1988]; Matter of Rush v Mordue, 68 NY2d 348, 352 [1986]; Matter of Schumer v Holtzman, 60 NY2d 46, 51 [1983]). "To demonstrate a clear legal right to the extraordinary writ of prohibition, a petitioner is required to show that the challenged action was 'in reality so serious an excess of power incontrovertibly justifying and requiring summary correction'" (Matter of Soares v Carter, 25 NY3d 1011, 1013 [2015], quoting LaRocca v Lane, 37 NY2d 575, 580 [1975]).
"A public prosecutor is a quasi-judicial officer, who performs important duties within our judicial system, and is subject to prohibition under proper circumstances not alone confined to double jeopardy situations" (Dondi v Jones, 40 NY2d at 13; see Rush v Mordue, 68 NY2d at 353 n 3; Schumer v Holtzman, 60 NY2d at 52; Matter of McGinley v Hynes, 51 NY2d 116, 123 [1980]; B.T. Prods., Inc. v Barr, 44 NY2d at 232). This includes the AG when that Office is exercising or threatening to exercise an ultra vires prosecutorial function (Matter of Haggerty v Himelein, 89 NY2d 431, 435 [1997]).
The discretionary remedy of prohibition is not available to correct procedural or substantive errors of law, no matter how egregious an error may be (Rush v Mordue, 68 NY2d at 353; LaRocca v Lane, 37 NY2d at 579; see Schumer v Holtzman, 60 NY2d at 51; Matter of Steingut v Gold, 42 NY2d 311, 315 [1977]; see also Dondi v Jones, 40 NY2d at 13). Rather, prohibition is available only when a court or prosecuting authority exceeds its jurisdiction or power in such a manner as to implicate the legality of the entire criminal proceeding (Rush v Mordue, 68 NY2d at 352-353; see Steingut v Gold, 42 NY2d at 315 [writ of prohibition lies "only where the very jurisdiction and power of the court are in issue"]). "Although the distinction between legal errors and actions in excess of power is not [*5]always easily made, abuses of power may be identified by their impact upon the entire proceeding as distinguished from an error in a proceeding itself" (Holtzman v Goldman, 71 NY2d at 569; see Matter of State of New York v King, 36 NY2d 59, 64 [1975]).
Here, petitioner demonstrated a clear legal right  to be free from prosecution by one without the jurisdiction to prosecute  and alleges that the AG is acting without jurisdiction as the prosecuting authority and Supreme Court is exceeding its powers by permitting the continued prosecution of the criminal proceeding. Moreover, petitioner's claim does not raise a mere error of procedural or substantive law; instead, petitioner's claim goes to the legality of the entire criminal proceeding: without valid authority to prosecute this matter, the AG lacked jurisdiction from the inception of (and throughout) the criminal proceeding.
Requiring petitioner to wait until he is convicted and seek redress on an appeal from an ensuing judgment of conviction is not appropriate. Of course, petitioner's jurisdictional argument could be pressed on an appeal from a judgment of conviction (see e.g. People v Gilmour, 98 NY2d 126 [2002]; People v Romero, 91 NY2d 750 [1998]), but the availability of an appellate remedy does not invariably foreclose the remedy of prohibition. When the remedial effectiveness of prohibition is superior to that of an appellate remedy, prohibition may be employed (see Rush v Mordue, 68 NY2d at 354; Dondi v Jones, 40 NY2d at 14; see also Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437 [1971] [writ of prohibition "is not available ordinarily as a method of premature appeal. Nevertheless, where the lower court is exceeding its jurisdiction and the writ . . . furnishes a more effective remedy, it may be availed of although the error might be corrected by appeal."]).
As the Court of Appeals has stated,
"[w]hen the validity of the appointment of a prosecutor is in question, the question should where possible be given a prompt and definite answer. It is not in the public interest to allow a prosecutor to carry out a lengthy investigation [and prosecution] when there is doubt that his or her appointment is valid, and to run the risk that the process will have to start all over again with a different prosecutor" (Matter of Working Families Party v Fisher, 23 NY3d 539, 544 [2014]).
Indeed, permitting a potentially improper prosecutor to proceed with a criminal proceeding may result in duplication of expense and effort in prosecuting the defendant (Schumer v Holtzman, 60 NY2d at 54). Additionally, resolution of the jurisdictional question posed by petitioner has import outside the confines of the underlying criminal proceeding: the legal issue of whether a valid referral may come from the Unified Court System may impact other prosecutions (see Dondi v Jones, 40 NY2d at 14 ["In the exercise of discretion, a court may consider the desirability of the prompt settlement of an [*6]important jurisdictional question so that a multiplicity of void proceedings in other cases will be prevented."]).
Thus, this special proceeding seeking a writ of prohibition is a proper vehicle for deciding the merits of petitioner's claim that the AG has no valid prosecutorial authority in the criminal proceeding (see Working Families Party v Fisher, 23 NY3d at 545; see also Schumer v Holtzman at 51-52; B.T. Prods., Inc. v Barr at 232; Dondi v Jones at 14).
B.
Having concluded that a writ of prohibition may, in the exercise of our discretion, lie in this matter, we turn to the merits of petitioner's jurisdictional claim.
The legislature has delegated the primary responsibility for prosecuting persons accused of crimes to district attorneys, the public officers entrusted with the general prosecutorial authority for the crimes occurring within their respective counties (Della Pietra v State of New York, 71 NY2d 792, 796 [1988]). In contrast, the AG has no general criminal prosecutorial authority. Instead, the AG's authority to prosecute is limited strictly to those matters permitted by statute (id.; see People v Cuttita, 7 NY3d 500, 507 [2006]; People v Gilmour, 98 NY2d at 131; People v Romero, 91 NY2d at 754). Therefore, the AG has no prosecutorial power other than that given to it by the legislature (Della Pietra v State, 71 NY2d at 796-797; see People v Gilmour, 98 NY2d at 132).
Whether the AG has the power to prosecute the underlying criminal proceeding turns on the meaning and scope of Executive Law § 63(3), and the primary issue of statutory interpretation before us is whether a valid referral can come from the Unified Court System under that provision. In resolving that issue, we start with the statute's text.
Executive Law § 63(3) states that the AG shall,
"[u]pon request of the governor, comptroller, secretary of state, commissioner of transportation, superintendent of financial services, commissioner of taxation and finance, commissioner of motor vehicles, or the state inspector general, or the head of any other department, authority, division or agency of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury."
Neither the Unified Court System nor any of the officers therein (e.g., the Chief Judge of the Court of Appeals, the Chief Administrative Judge) is specifically enumerated in the statute. Thus, a valid referral can come from the Unified Court System only if it is a "department, authority, division or agency of the state," within the meaning of Executive Law § 63(3), whose "head[*7]" is authorized to make such a referral.
In determining whether the Unified Court System is a "department, authority, division or agency of the state," we are guided by cardinal principles of statutory interpretation. First, we give primacy to the intention of the legislature (People v Galindo, 38 NY3d 199, 203 [2022]; Riley v County of Broome, 95 NY2d 455, 463 [2000]; McKinney's Cons Laws of NY, Book 1, Statutes § 92[a], at 176-177; see McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 352-353), the clearest indicator of which is the statutory text (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see Riley v County of Broome, 95 NY2d at 463; McKinney's Cons Laws of NY, Book 1, Statutes §§ 92[b], 191, at 182, 352). Second, we enforce the plain meaning of the statutory text, giving the text its ordinary and accepted meaning (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 583; McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 232, at 188, 392), and interpreting the words thereof according to their ordinary and popular significance (see McKinney's Cons Laws of NY, Book 1, Statutes § 232, at 392-393).
Giving the operative text "department, authority, division or agency of the state" its ordinary and accepted meaning, the legislature's intention is clear: an agency within the executive branch may make a referral, but the judicial branch cannot. The words chosen by the legislature are, based on their ordinary and popular significance, the nomenclature of executive branch administrative agencies (see e.g. Executive Law §§ 31 [listing divisions within the executive branch], 40 [Department of Audit and Control], 60 [Department of Law], 90 [Department of State], 180 [Division of Budget], 210 [Division of State Police], 260 [Division of Housing and Community Renewal], 270 [Division of Alcoholic Beverage Control, State Liquor Authority], 709 [Division of Homeland Security and Emergency Services], 803 [Adirondack Park Agency], 836 [Division of Criminal Justice Services]).
Moreover, Executive Law § 63(3) requires that a referral come from "the head" of a department, authority, division or agency (see People v Gilmour, supra). A "head" in this context plainly refers to an officer within the executive branch (see e.g. NY Const, article V, § 4 ["Department heads"]; Executive Law §§ 30, 40[1], 52[1], 60, 90, 155, 180, 200, 210, 240, 260, 293[1], 351, 500[1], 652). The Chief Judge of the Court of Appeals is "the chief judge of the state" and "the chief judicial officer of the unified court system" (NY Const, article VI, § 28[a]; Judiciary Law § 210[1]); neither the Chief Judge nor the Chief Administrative Judge is characterized in the Constitution or the Judiciary Law as "the head" of the Unified Court System.
The Unified Court System  the judicial branch of New York State government (see NY Const, article VI, § 1; Canales-Jacobs v New York State Off. of Ct. Admin., 640 F Supp2d 482, 488 [SDNY 2009])[*8] is not, in common parlance, a department, authority, division or agency. Had the legislature intended to permit the Unified Court System to make a referral it would have done so in language reflecting such an intent (see generally People v Gilmour, 98 NY2d 133). The legislature knows how to refer to the judiciary when it intends to do so (see e.g. Executive Law § 63[2] ["supreme court"], [7] ["court of record"], [12] ["supreme court"]).[FN1] We cannot expand the plain meaning of the text of Executive Law § 63(3) to force the law to say something that it does not (see McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 190-191; see also Matter of Butler v New York City Health & Hosps. Corp., 82 AD2d 136, 143 [1st Dept 1981]; Matter of Agioritis, 52 AD2d 128, 135 [1st Dept 1976]). Similarly, we cannot expand the statute to cover something that the legislature could have easily expressed had it intended to do so (see McKinney's Cons Laws of NY, Book 1, Statutes§§ 74, 94, at 157, 194; see also People v Gray, 2 AD3d 275 [1st Dept 2003]; Butler v New York City Health & Hosps. Corp., 82 AD2d at 143).
The legislature's omission of the Unified Court System and any specified officers thereof in Executive Law § 63(3) is telling: "the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (McKinney's Cons Laws of NY, Book 1, Statutes § 74, at 157; see Matter of Diegelman v City of Buffalo, 28 NY3d 231, 237 [2016]; People v Tychanski, 78 NY2d 909, 911-912 [1991]; Pajak v Pajak, 56 NY2d 394, 397 [1982]). This principle has particular force where, as here, an expansive interpretation of the statute to include that which is not expressly mentioned in it would result in a significant practical change to an established rule of law (McKinney's Cons Laws of NY, Book 1, Statutes, § 74, at 158; see Morell v Balasubramanian, 70 NY2d 297, 302-303 [1987]; PB-7 Doe v Amherst Cent. Sch. Dist., 196 AD3d 9, 12 [4th Dept 2021]). If we interpreted Executive Law § 63(3) in the manner suggested by the AG, the statute would, for the first time, allow for a referral from the Unified Court System.[FN2] We cannot impute to the legislature an intention to make a significant change to a long-established rule (particularly one relating to the criminal jurisdiction of a prosecuting authority) in the absence of a clear manifestation of such an intention (see McKinney's Cons Laws of NY, Book 1, Statutes § 153, at 332; see also Town of Aurora v Village of E. Aurora, 32 NY3d 366, 375 [2018]; see generally McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 353). Thus, the legislature's failure to include the Unified Court System or any specified officers thereof in Executive Law § 63(3) indicates that the exclusion was intentional.
Our reading of the plain meaning of Executive Law § 63(3) is confirmed by the statute's legislative history (see Riley v County of Broome, 95 NY2d at 463-465).[FN3] Executive [*9]Law § 63(3) was enacted in 1951, and provided that the following executive branch officers could make a referral to the AG: the Governor, the Secretary of State, the Comptroller, the Superintendent of Public Works, and the Commissioner of Taxation and Finance (L 1951, ch 800). From 1955 to 1968, the legislature added additional executive branch agencies to Executive Law § 63(3) (see L 1955, ch 586 [Superintendent of Insurance]; L 1956, ch 118 [Superintendent of Banks]; L 1965, ch 790 [Commissioner of Motor Vehicles]; L 1968, ch 420 [Commissioner of Transportation]).[FN4]
In 1969, the legislature, at the prompting of the AG, amended Executive Law § 63(3) "to include the head of any department, authority, division or agency of the State among the officers of the State" who may make a referral to the AG (Memo of State Dept. of Law, 1969 McKinney's Session Laws of NY, at 2460). According to then-AG Louis J. Lefkowitz's Office,
"[w]hatever may have been the earlier reasons for limiting the [AG's] authority in such matters to offenses reported by the officers now named in the statute, experience in recent years has demonstrated the wisdom of expanding the [AG's] jurisdiction to include offenses called to [the AG's] attention by the head of any State department or agency. And by including all departments and agencies there will be no future need to amend the statute on a piece-meal basis to add other State agencies" (id.).
Neither the AG, nor the Judicial Conference of the State of New York (which was asked to comment on the amendment), nor the Division of Budget (which prepared a budget report relating to the amendment) indicated in their respective legislative memoranda that the result of the amendment would be to include the Unified Court System among the State entities that could make a referral (Memo of State Law Dept., Letter from State Judicial Conference, Budget Rpt on Bill, Bill Jacket, L 1969, ch 814). Thus, nothing in the legislative history of Executive Law § 63(3) supports the notion that the Unified Court System can make a referral (see generally People v Romero, 91 NY2d at 756-757]).
The purpose of the 1969 amendment, which is an important indicator of the legislature's intention in passing it (see McKinney's Cons Laws of NY, Book 1, Statutes § 96, at 202; People v Thomas, 33 NY3d 1, 5-6 [2019]; see also Riley v County of Broome, 95 NY2d at 463; McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 353), was to provide every agency within the executive branch the ability to make a referral to the AG, not expand to the judiciary the ability to make such a referral. The history underlying Executive Law § 63(3), which is another important indicator of the legislature's intention in passing the 1969 amendment (see McKinney's Cons Laws of NY, Book 1, Statutes §§ 124, 191, at 251-255, 353; see also Consedine v Portville Cent. School Dist., 12 NY3d 286, 290-292 [2009]), reflects that the prerogative to make referrals was always enjoyed by [*10]entities within the executive branch, and the course of the legislation relating to that provision  a series of amendments incrementally expanding those entities within the executive branch empowered to make referrals, culminating in the 1969 amendment  demonstrates that the legislature did not intend to authorize the Unified Court System to make referrals (see McKinney's Cons Laws of NY, Book 1, Statutes § 124, at 255; see also People v Nuccio, 78 NY2d 102, 104-105 [1991]; Ferres v City of New Rochelle, 68 NY2d 446, 451-454 [1986]).
The rule of statutory construction ejusdem generis further buttresses the conclusion that the legislature did not intend to empower the Unified Court System to make a referral. Under that rule, a court should limit the meaning of general language of a statute by the specific phrases that preceded the general language, provided such a construction does not contradict the intention of the legislature (McKinney's Cons Laws of NY, Book 1, Statutes § 239[b], at 407; see People v Bartkow, 96 NY2d 770, 772 [2001]; Avella v City of New York, 131 AD3d 77, 85 [2015]). Thus, the meaning of general language may be ascertained by reference to the specific company it keeps (People v Illardo, 48 NY2d 408, 416 [1979]). "Where[, as here,] a statute enumerates several classes of things, and immediately following and classed with such enumeration the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specifically enumerated" (McKinney's Cons Laws of NY, Book 1, Statutes § 239[b], 409-410; People v Panitz, 251 AD 276, 278 [1st Dept 1937]). Because the specific agencies enumerated in Executive Law § 63(3) are all within the executive branch, it is reasonable to infer that the "the other department[s], authorit[ies], division[s] or agenc[ies]" must lie within that branch as well.
Accordingly, because the Unified Court System could not make the referral, the AG lacks the power to prosecute petitioner in the criminal proceeding, and we are, in light of the manner in which the parties have litigated this special proceeding, constrained to dismiss the indictment (see People v Gilmour at 132; People v Romero at 758; see also People v Cuttita at 507; People v Leahy, 72 NY2d 510 [1988]; cf. People v Codina, 297 AD2d 539 [1st Dept 2002]).
In light of our conclusion that the Unified Court System cannot make an Executive Law § 63(3) referral to the AG, we need not and do not pass on petitioner's contention that the referral was infirm because it did not come from "the head" of the Unified Court System.
The parties have not addressed whether any appropriate prosecuting authority could subsequently prosecute petitioner for the charged crimes (see generally People v Di Falco, 44 NY2d 482 [1978]; People v Fox, 253 AD2d 192 [3d Dept 1999], lv denied 93 [*11]NY2d 1018 [1999]). Accordingly, we take no position on that issue.
Accordingly, the petition pursuant to CPLR article 78 for a writ of prohibition should be granted to the extent that respondent Attorney General of the State of New York be prohibited from continuing to prosecute petitioner in the criminal proceeding entitled People v Makhani (N.Y. County Ind. No. 1420/21), respondent Hon. Diane Kiesel should be prohibited from continuing to exercise jurisdiction over that criminal proceeding, and the indictment is dismissed.
Finally, we note that Justice Kiesel has elected, pursuant to CPLR 7804 (i), not to appear in this proceeding.
Opinion by Higgitt, J. All concur.
Writ granted and indictment dismissed.
Renwick, J.P., Friedman, Singh, Shulman, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 17, 2022

Footnotes

Footnote 1: Given that the legislature has "delineate[d] meticulously the prosecutorial power of the Attorney General" (People v Gilmour, 98 NY2d at 132; see People v Romero, 90 NY2d at 757-758), it strains credulity that the legislature would refer to the Unified Court System in an oblique manner if it intended to permit the judiciary to make referrals.

Footnote 2: The AG has identified no case, reported or otherwise, in which that Office has served as the prosecuting authority in a criminal proceeding based on a referral from the Unified Court System.

Footnote 3: In People v Gilmour, the Court of Appeals traced the origins of the AG's prosecutorial powers from colonial to modern times, and reviewed certain aspects of Executive Law § 63(3)'s legislative history (98 NY2d at 129-132).

Footnote 4: Executive Law § 63(3) was amended several times to reflect changes to the makeup and organization of the executive branch (e.g., elimination of Departments of Public Works, Insurance, and Banks, and creation of Department of Financial Services).